[Civ. No. 3219. Third Appellate District.—April 26, 1927.]

CHARLES J. MAGUIRE, Appellant, v. GEORGE W. LONG-HURST, etc., Respondent.

[1] CONTRACTS — SALE OF AUTOMOBILE — ASKING PRICE — EVIDENCE — FINDINGS.—In this action to recover the amount alleged to be due under a contract whereby defendant agreed to sell plaintiff's automobile for at least eleven hundred dollars, the finding that it was not so agreed by the parties was not supported by the evidence and was contrary to the express terms of the contract.

[2] ID.—VIOLATION OF TERMS OF CONTRACT—RIGHT OF RECOVERY.—In such action, where by the terms of the contract it was agreed that the car was to be sold for the highest possible amount, defendant was not authorized to trade plaintiff's car and thereafter to engage in a series of exchanges resulting in a loss to plaintiff, but plaintiff was entitled to the full amount agreed upon.

[3] ID.—COST OF DISCOUNTING NOTE—ABSENCE OF AUTHORITY.—In such action, where the contract did not authorize defendant to discount plaintiff's note with a finance company, defendant could not charge plaintiff with the cost thereof.

(1) 42 C. J., p. 767, n. 4.

APPEAL from a judgment of the Superior Court of Placer County. J. B. Landis, Judge. Reversed.

The facts are stated in the opinion of the court.

Horace W. B. Smith for Appellant.

K. D. Robinson for Respondent.

FINCH, P. J.—The complaint alleges that the plaintiff purchased from the defendant a Flint sport roadster for $2,245 and delivered to defendant in payment therefor a Flint touring car and the plaintiff's promissory note for $945; that "defendant agreed to give plaintiff a credit upon the purchase price of said Flint sport roadster of $1,300 on account of said Flint touring car, and defendant further agreed that in the event he, defendant, was able to dispose of said Flint touring car for $1,300 he, the defendant, would pay to plaintiff the sum of $500 out of the proceeds of said sale, less $100 to be retained by the defendant for possible service charges which might accrue upon the Flint sport roadster above mentioned; and the defendant further agreed that in no event would he sell the said Flint touring car for less than $1,100, in which event he, defendant, would pay to plaintiff the sum of $300, less $100 for possible service charges as above set forth''; that the defendant sold the touring car for $1,300 and that he performed no services on the roadster; and that the plaintiff had fully paid the amount due upon his promissory note. The prayer is for judgment in the sum of $500.

The answer admits the alleged sale and that defendant agreed to give plaintiff a credit of $1,300 on account of the touring car, but "denies that defendant further agreed that in the event he, defendant, was able to dispose of said Flint touring car for the sum of $1,300 he, said defendant, would pay to plaintiff the sum of $500 out of the proceeds of said sale, less $100 to be retained by defendant for possible service charges which might accrue upon the Flint sport roadster in plaintiff's complaint mentioned; defendant denies that he, defendant, further agreed that in no event would he sell the said Flint touring car for less than $1,100, in which event he, defendant, would pay to plaintiff the sum

of $300, less $100 for possible service charges as set forth in plaintiff's complaint, and in this connection defendant avers that he did agree and would give a credit to plaintiff upon the purchase price of said Flint sport roadster of $1,300 on account of said Flint touring car, and that defendant agreed with plaintiff that upon the receipt by him, defendant, of said Flint touring car, he would put said Flint touring car in a marketable condition and repair the same and if upon a resale of said Flint touring car there should be or remain any profit to the defendant, that he, defendant, would pay said amount to plaintiff, less the sum of $100 to be retained by the defendant for service charges; that there was no profit to defendant by reason of said transaction and that there was nothing, nor is there now anything due plaintiff from defendant by reason of such transaction.''

The defendant's commission, or profit, on the sale of the roadster was $511. It is clear from his testimony given at the trial and the admissions and allegations of his answer that he agreed that if, after deducting $100 from such commission, the remainder thereof, added to the amount for which the touring car might be sold, should exceed the sum of $1,300, then the defendant would give the plaintiff credit for the excess. The defendant sold the promissory note shortly after he received it and the plaintiff paid the amount thereof before this action was commenced. At the time of the transaction the defendant signed and delivered to the plaintiff an instrument reading as follows:

''Auburn, California, December 17, 1924.

''We agree to sell to C. J. Maguire one Flint Sport Roadster, Model 55.... ... We agree to allow C. J. Maguire the sum of $1,300 on Flint Touring car that is to be repaired and put in shape and sold for the highest possible amount. *This amount to be at least $1,100.* We agree to retain the sum of $100 from our commission of $500 that we obtain from the sale of said roadster. This amount is to be used in the form of service on sport roadster if any should occur. All other money obtained from resale of Flint Touring car is to be applied on note of $945 held by us as balance due on Flint Roadster.''

The italicized words were inserted by the defendant at the plaintiff's request. The court found that the defendant

"agreed that in the event that he, defendant, was able to dispose of said Flint touring car for the sum of $1,300 he, said defendant, would pay to plaintiff the sum of $500 out of the proceeds of said sale, less $100 to be retained by defendant for possible service charges which might accrue upon the Flint sport roadster; . . . that defendant did not further agree that in no event would he sell the said Flint touring car for less than $1,100 in which event he, defendant, would pay to plaintiff the sum of $300, less $100 for possible service charges; . . . that defendant agreed with plaintiff that . . . he would and did put said Flint touring car in a marketable condition and resell the same, and if, upon a resale of said Flint touring car, there should be or remain any profit to the defendant that he, defendant, would pay said amount to plaintiff, less the sum of $100 to be retained by the defendant for service charges; that there was no profit to defendant by reason of said transaction and there was nothing, nor is there now anything, due plaintiff from defendant by reason of such transaction." Judgment was entered in favor of defendant for costs of suit, and the plaintiff has appealed therefrom.

[1] The finding that "defendant did not further agree that in no event would he sell the said Flint touring car for less than $1,100" is contrary to the express terms of the written agreement. The agreement is perfectly clear in that respect, although it is ambiguous in other particulars. The finding is also contrary to the testimony of the defendant, who testified: "I told him (plaintiff) I did not know I could sell the car for cash, and he said he wanted to get at least $1,100, and through his suggestion he had me insert that $1,100, to sell for at least that much." The defendant further testified that it cost him "$54.63 to put the Flint touring car in condition" and a commission of $33.75 for selling it. The testimony is conflicting as to whether the price of $1,100 referred to in the agreement was to be the net price or the gross price from which the cost of repairs and the expense of making the sale were to be deducted. If such cost and expense were to be deducted, the least amount for which the defendant was authorized to sell the touring car is $1,011.62 net. The addition thereto of $411, the amount of defendant's commission on the sale of the road-ster, less $100, gives a total of $1,422.62, for which sum, at

least, plaintiff was entitled to credit on the purchase price of the roadster, or $122.62 in addition to the credit of $1,300 originally given. Instead of selling the touring car for "at least $1,100" as agreed, the defendant pursued a course outlined in his written statement to the plaintiff as follows:

"Our cost on the Flint roadster was $1,734, which we retailed at $2,245, leaving a profit of $511. Trading in on Flint 55 touring car at $1,300 which cost us $54.63 to put in selling shape, selling at $1,300 with a commission of $33.75, our total loss on the sale of the Flint touring car being $88.38. We took in trade then a Durant 4 touring car at $600 and, owing to a wreck the car had through a defective spindle and a paint job, with four new tires, the complete service cost on this car was $271.68. The interest on the flooring of the roadster cost $10.50, and on your note of $945 the interest was figured at 7%, or $33.12. We cashed this note with the Finance Corporation of Sacramento, and they in turn charge 1½ per month, which leaves a balance of $51.93. We sold this Durant 4 touring car for $600, paying a commission of $25, making the total cost of the Durant $959.11. . . . We took a Ford trade in of $100 on the Durant sale, which is in our possession at the present time. . . . If we are fortunate enough to obtain the full $100 out of the Ford touring the loss will stand at $447.49, if not it will be even more than that; but as the statement stands at the present time with a profit of $511 and a loss of $447.49, this leaves only a clear profit of $63.51, while the original agreement called for $100 to be retained by us." [2] This course of trading was not a compliance with the defendant's agreement to sell the Flint touring car "for the highest possible amount. This amount to be at least $1,100." [3] Neither does it appear that the defendant had the right to charge the plaintiff with the cost of discounting the latter's promissory note. It is clear that the plaintiff is entitled to judgment, but the evidence is conflicting as to the amount thereof, and further discussion of such conflicting evidence would serve no useful purpose.

The judgment is reversed.

Hart, J., and Plummer, J., concurred.