[Civ. No. 6367. Third Dist. Mar. 17, 1943.]

ANGELYN MORRIS, as Executrix, etc., et al., Respondents, v. A. F. GEORGE et al., Appellants.

Hawkins & Hawkins & Cardozo for Appellants.

Whitehurst & Logan for Respondents.

SCHOTTKY, J. pro tem.—The Morris Ranch on the west side of Stanislaus County consisted of 359.80 acres. It was bounded on the north by the Crows Landing-Modesto Highway; on the east by a road known as the Kilburn Road; on the south by Orestimba Creek, and on the west by a road known as Crow Lane. After the coming of irrigation to the west side a supply ditch was constructed to bring water from the canal of the San Joaquin and Kings River Canal and Irrigation Company for the irrigation of this and other ranches. This supply ditch entered the Morris Ranch from the west, crossing Crow Lane, and ran through the ranch in a general easterly direction to the Kilburn Road. It then ran along the easterly boundary of the ranch northerly along the Kilburn Road to the northeasterly corner of the ranch where it turned easterly and carried water to other ranches toward the San Joaquin River.

In 1924 Virginia A. Morris, the then owner of the ranch, deeded 191.80 acres lying along the southwest boundary of said ranch to her son Roy L. Morris and his wife, Angelyn H. Morris, respondents here, and the remaining 168 acres to another son, Archer Morris. In both deeds Virginia Morris reserved to herself a life estate which she retained until her death in 1929. In 1930 Archer Morris deeded to appellants Antonio F. George and Maria S. George 85 acres which was the westerly portion of the land he had received from his mother. On April 10, 1933, Antonio F. George brought an action against respondent Roy Morris and his tenants to quiet title to an irrigation ditch marked ''Old Ditch'' on plaintiff's Exhibit D, originating at the irrigation company canal on the Roy Morris land and running in a northwesterly direction across said land to the George land and serving a portion of the George land with water for irrigation. The Morrises, defendants in said action, respondents here, filed a cross-complaint in which they claimed the right to drain excess water through a ditch on the George land marked ''Drain Ditch'' on plaintiff's Exhibit D, connecting with the ''Old Ditch'' just referred to, and claimed that George threatened to obstruct said ditch and prayed that their easement to drain water through said ditch be quieted. A trial was had in the former action, but before a final judgment was entered appellants George purchased from Archer Morris the remaining 83 acres of the Morris Ranch and thus became the owners of

all the original Morris Ranch lying easterly from the 191.80 acres belonging to respondents. An agreement of compromise was then entered into on December 11, 1934, by the terms of which appellants George agreed to abandon their claim to the ditch to which they asserted the right to use for irrigating their land, and respondents Morris agreed to build a new ditch for their and appellants' use, said new ditch running from Crow Lane direct to appellants' boundary at the same point where the old ditch entered appellants' land. The agreement provided further that this new ditch was to be constructed by respondents so as to deliver to appellants' land 16 cubic feet of water per second at a height of $5\frac{1}{2}$ inches above the top of the old concrete box marked H on plaintiffs' Exhibit D, which had previously established the height to which water was delivered to the George land. In the same agreement appellants granted respondents the right to flow drainage water through the ditch on appellants' land for the purpose of draining excess water from respondents' land, but restricting the amount of water that respondents could drain to four cubic feet per second.

Controversies soon developed between the parties both as to the drainage ditch through the first tract purchased by appellants, and as to the main supply ditch through the second tract purchased by appellants, the details of which will be set forth more fully hereinafter; and on October 19, 1936, the instant action was filed by respondents against appellants.

The complaint is in four counts. In the third count respondents claim that appellants failed to build a certain fence, as required by the compromise agreement; but after the complaint was filed the fence was built by appellants and this cause of action was abandoned.

The first count alleges that respondents and appellants own adjoining tracts of land; that for over twenty years respondents have been the owners of an easement to maintain a certain ditch located on second tract purchased by appellants, and of two concrete boxes therein, and to conduct water through said ditch from the main supply ditch of the San Joaquin and Kings River Canal and Irrigation Company for the irrigation of a portion of respondents' land; that appellants removed the concrete boxes from said ditch and destroyed the ditch to respondents' damage in the sum of $1,000; that ap-

pellants prevented respondents from using said ditch; and respondents sought damages and the restoration of the said ditch and boxes.

The second count alleges that appellants erected a large concrete stop-gate in said supply ditch next hereinabove mentioned at or near the point where it enters respondents' land, and entered respondents' land and constructed a portion of said stop-gate in and upon respondents' land; that at about the same time appellants changed the course of said supply ditch on their lands and constructed same below said stop-gate with so great a fall that the bottom of the said ditch below said stop-gate has already become badly washed and deepened and that in a few years the sides thereof will wash away and will reach and extend into respondents' land; that the encroachment of the stop-gate constitutes a continuing trespass and the change of the route of the ditch constitutes a nuisance; that by reason of such acts of appellants, respondents have suffered damage in the sum of $1,500 and pray for an injunction restraining the maintenance of any part of the stop-gate on plaintiffs' land and the maintaining of the new ditch on the new course, and pray for the restoration of the ditch on the old course and for damages.

The fourth count alleges the execution of the compromise agreement of December 11, 1934; that appellants have obstructed and interfered with the right granted respondents in said agreement to flow drainage water from respondents' land by maintaining obstructions in said drain ditch about 18 inches above the bottom of said ditch constructed by respondents pursuant to said contract, at the point where it enters appellants' said land and about 18 inches above the bottom of the old concrete box on appellants' land, which bottom of said concrete box for more than twenty years has established and still establishes the level of the bottom of said ditch at its entrance into appellants' land and through which ditch the excess water from a portion of respondents' land has drained for more than twenty years; that because of said obstruction, placed in said ditch by appellants and maintained by them, excess water which otherwise would have passed down said drain ditch without damage to respondents has backed up and accumulated and remained on respondents' lands and drowned out and destroyed crops of beans growing thereon since the execution of the agreement;

that appellants have also changed the routing of said ditch on their land so as to interfere with and prevent the drainage of respondents' land; and respondents pray for $1,000 damages, $2,000 exemplary damages, and for an injunction against maintaining in said ditch any obstruction higher than the bottom of said old concrete box or otherwise obstructing or interfering with respondents' drainage of their land, and to restore said ditch to its former routing on appellants' land.

The answer of appellants raised all material issues. As to Count One, appellants admitted the removal of the concrete boxes and the destruction of the ditch but alleged that respondents did not have any interest or easement in said ditch. As to Count Two, appellants alleged that before re-routing said supply ditch they obtained the consent of respondents and of the San Joaquin and Kings River Canal and Irrigation Company; and appellants justified the encroachment of the concrete box on respondents' land upon the ground that appellants had an easement and right-of-way for irrigating from the ditch, and the gate was necessary for that purpose.

At the trial respondents did not seek to recover damages as to any count except Count Four, and after a trial lasting three days the trial court found substantially in accordance with the allegations of the complaint and rendered judgment as follows:

"1. On Count No. 1 of said complaint it is ordered, adjudged and decreed that the defendants, A. F. George and Maria S. George be, and they are hereby required to restore the ditch along the boundary line between plaintiffs' and defendants' lands in said complaint and findings and hereinafter described, where destroyed by defendants and to install such boxes, or stop gates, therein as will permit of the irrigation of the property of plaintiffs and as heretofore were installed in said ditch before its destruction by defendants, and that defendants, their successors and assigns, agents, servants and employees, be and they are hereby forever enjoined from in any way interfering with the maintenance and use of said ditch and irrigation of plaintiffs' said field therefrom.

"The land of plaintiffs herein referred to is the following described real property, situated in the County of Stanislaus, State of California, and particularly described as follows, to-wit:"

(Here follows a description of plaintiffs' land, containing 191.80 acres.)

"That the ditch hereinabove referred to is that certain irrigation ditch on defendants' said premises which said irrigation ditch runs through a portion of defendants' said lands adjacent to a portion of the above described boundary line of plaintiffs' said lands specified as follows, to-wit:"

(Here follows a description of boundary line.)

"That the said field of plaintiffs irrigated from said ditch lies immediately southerly from said portion of said boundary line along which said ditch ran as aforesaid.

"2. On Count 2 of said complaint it is ordered, adjudged and decreed that defendants, A. F. George and Maria S. George, their successors and assigns, agents, servants and employees, be, and they are hereby. forever enjoined from encroaching upon the land of plaintiffs herein, and it is further ordered, adjudged and decreed that they remove therefrom the concrete portions of that gate installed by them in the irrigation ditch on plaintiffs' land, which conducts water from the main supply ditch of the San Joaquin and Kings River Canal and Irrigation Company and runs in a general easterly direction through plaintiffs' said premises and thence to and through defendants' said premises.

"It is further ordered, adjudged and decreed that the defendants, A. F. George and Maria S. George, their successors and assigns, agents, and employees, be, and they are hereby forever enjoined from constructing or maintaining the said irrigation ditch along the boundary line between plaintiffs' and defendants' land where defendants changed the course of said ditch from its point of entry into their lands from plaintiffs' said lands from the course over which said ditch had heretofore run in any manner that will cause the lateral support of said ditch on plaintiffs' side of said ditch to fall away or subside.

"It is further ordered, adjudged and decreed that defendants A. F. George and Maria S. George, their successors and assigns, agents, servants and employees, be, and they are hereby required to maintain boards in the drops, or gates, in the said main supply ditch so as to restrain water in said ditch hereinabove referred to so that it will not flow too rapidly down said ditch and cause said ditch to wash away and erode.

"3. On Count 4 of said complaint it is ordered, adjudged and decreed that the defendants, A. F. George and Maria S.

George, their successors and assigns, agents, servants and employees forthwith restore the drainage ditch on defendants' lands, referred to in said complaint and findings to the condition that it was in previous to the construction of the wooden box therein and that the floor of said wooden box be lowered by defendants to a height not greater than the floor of the concrete box in said ditch; that the defendants, their successors and assigns, their agents, servants and employees, be forever enjoined from maintaining any obstructions in said ditch on defendants' lands higher than the bottom of said old concrete box or otherwise obstructing or interfering with plaintiffs' drainage of their said premises, or from interfering with said ditch in any manner whatsoever or at all other than the upkeep and repair of said ditch.

"The drainage ditch above referred to is that certain ditch on defendants' land through which plaintiffs are granted the right to flow drainage water for the purpose of draining excess water from plaintiffs' land into the existing ditches or drains in the contract set forth as Exhibit 'A' to the complaint herein, in which ditch is located that certain old concrete box in said contract and hereinabove described, the boundary lines between the lands of plaintiffs and defendants at a point where said ditch leaves plaintiffs' land being described in said contract as being 44 feet, more or less, above said concrete stop gate.

"It is further ordered, adjudged and decreed that plaintiffs have and recover damages against defendants, A. F. George and Maria S. George, in the sum of $500.00 for loss of bean crops in 1935 and 1936 together with the costs herein, which are hereby taxed in the sum of $53.75."

Appellants seek a reversal of the judgment and a retrial of the action as to all three counts, and in their opening brief they make the following points: I. The evidence is insufficient to justify the finding and the judgment based thereon that the plaintiffs were damaged in the sum of five hundred dollars; II. The evidence did not justify the court in ordering defendants to lower the wooden box which was in place on December 11, 1934, the date of the origin of plaintiffs' right, or in ordering defendants to lower the grade of their ditch to an elevation lower than existed December 11, 1934; III. The court erred in compelling defendants to change their ditch and box therein to accommodate an additional burden on the servitude caused by plaintiffs' change in the mode of

checking their land and irrigating it; IV. The court erred in admitting evidence, over objection, concerning the prior use of defendants' ditch as a discharge ditch for surplus water; V. The evidence is insufficient to sustain the findings and judgment that plaintiffs are entitled to an easement to irrigate through the ditch on defendants' land acquired in 1934, the field lying ''immediately southerly'' from said ditch; VI. The court erred in requiring defendants to remove undescribed ''portions of that gate installed by them'' in the canal of the San Joaquin and Kings River Canal and Irrigation Company; VII. The judgment of the court is void for uncertainty in its injunctive portions. We shall discuss these points in the order that they relate to various causes of action, and not in the order set forth by appellants. Point V relates to the first count; Point VI to the second count; Points I, II, III and IV to the fourth count; and Point VII to all three causes of action.

The record in this case is voluminous, the Reporter's Transcript consisting of nearly 500 pages. We have read it with great care and believe that the entire judgment, with the exception of the amount of damages awarded on the fourth count, is abundantly sustained by the record. The evidence was highly conflicting, as is not unusual in cases where the feeling between the parties is such as the record shows it to be in this case. In view of the fact that so great a portion of appellants' argument relates to the insufficiency of the evidence, we deem it proper to repeat what this court said in the recent case of *Estate of Stahl,* 54 Cal.App.2d 565 [129 P.2d 475], at page 566:

''It is a rule too well established to require the citation of authorities that before an appellate tribunal is justified in reversing a judgment upon the ground of the insufficiency of the evidence, it must appear from the record that, accepting the full force of the evidence adduced, together with every inference favorable to the prevailing party which may be drawn therefrom, it still appears that the law precludes the prevailing party from recovering a judgment. The evidence must be construed most strongly against the losing party. Every favorable inference and presumption which may fairly be deduced from the evidence should be resolved in favor of the prevailing party. The prevailing party's evidence must ordinarily be accepted as true, and evidence which is contradictory must be disregarded.''

■ Appellants attack the judgment as to Count One by asserting that "The evidence is insufficient to sustain the findings and judgment that plaintiffs are entitled to an easement to irrigate through the ditch on defendants' land acquired in 1934." The judgment, as hereinbefore quoted in part, requires appellants "to restore the ditch along the boundary line between plaintiffs' and defendants' lands . . . where destroyed by defendants and to install such boxes, or stopgates, therein as will permit of the irrigation of the property of plaintiffs and as heretofore were installed in said ditch before its destruction by defendants."

The evidence shows that this ditch was located on the second tract purchased by appellants as far back as 1919, and that it was used to irrigate the so-called 40 acre "Creek Field" of respondents up to the time that appellants took the boxes out of it and destroyed it. When appellants purchased the land on which said ditch was located they evidently wanted to get rid of the ditch, and did so, and the trial court was fully justified in requiring them to restore what the trial court found upon sufficient evidence was a right of respondents.

■ Appellants also attack the judgment as to Count One upon the ground that it is void for uncertainty in its injunctive portions, and a similar attack is made as to the portions relating to Counts Two and Four. Appellants argue that "the judgment is uncertain and deficient in that it does not describe the ditch which defendants are to restore," and "the course of that ditch, the width of that ditch, and the depth of that ditch, are not stated, nor is the field to be irrigated from the ditch described with any certainty whatsoever."

Appellants cite cases which state the familiar rule that a judgment must be sufficiently definite and certain to enable it to be enforced and if it is not certain and cannot be made certain by an inspection of the judgment roll, it is void. The cases cited by appellants are principally to the effect that in actions involving the title to, or possession of, real property, the judgment affecting such property or their possession should be sufficiently definite and certain to enable an officer charged with the duty of executing a writ of possession to go upon the ground, and, without exercising judicial functions, ascertain the locality of the lines as fixed by the judgment. (*People* v. *Rio Nido Co., Inc.,* 29 Cal.App.2d 486

[85 P.2d 461].) But the rule as to judgments involving injunctions is somewhat different as an injunction either restrains a person from doing certain acts or orders him to do certain acts, and the rule in such cases is as stated in *Wheeler* v. *Superior Court,* 82 Cal.App. 202 [255 P. 875], cited by appellants: ''An injunction should contain sufficient information on its face to apprise the party upon whom it is served of what he is restrained from doing.''

In the instant case a reading of the judgment as to Count One shows that it requires appellants to restore the ditch on appellants' land along the boundary line of respondents' land, and adjacent thereto, describing the boundary line, where said ditch was destroyed by appellants and to install such stop-gates therein as were installed in said ditch before its destruction by appellants; and that said judgment provides further that the field of respondents irrigated from said ditch lies immediately southerly from said portion of said boundary line along which said ditch ran.

We believe that the judgment as to Count One was sufficiently clear and definite to enable appellants to know what was required of them, as it was merely to restore what the court found upon sufficient evidence they had destroyed wrongfully. We might add that if appellants desired to have what they were required to do described with such meticulous particularity as their brief would indicate, they should have had a detailed survey and description of said ditch made before they destroyed it. Neither reason nor authority support the contention of appellants, and we need only refer to the following cases: *Rosenthal* v. *Matthews,* 100 Cal. 81 [34 P. 624]; *Humphreys* v. *Moulton,* 1 Cal.App. 257 [81 P. 1085]; *Allen* v. *Stowell,* 145 Cal. 666 [79 P. 371, 104 Am. St.Rep. 80, 68 L.R.A. N.S. 223]; *Fresno* v. *Fresno Canal & Irrigation Co.,* 98 Cal. 179 [32 P. 943]; *Byers* v. *Colonial Irrigation Co.,* 134 Cal. 553 [66 P. 732]; *Williams* v. *Blue Bird Laundry Co.,* 85 Cal.App. 388 [259 P. 484]. None of the cases cited by appellants are contrary to our conclusion upon this point and we deem it unnecessary to prolong this opinion by discussing them.

 Appellants attack the judgment as to Count Two by stating that ''The Court erred in requiring defendants to remove'' from plaintiffs' land ''undescribed 'portions of that

gate installed by them' in the canal of the San Joaquin and Kings River Canal and Irrigation Company.''

The evidence showed and the court found that after appellants acquired the second tract of land in 1934 they re-routed the main supply ditch of the San Joaquin and Kings River Canal and Irrigation Company on their land and built a new concrete stop-gate at the point where said ditch entered their land, said gate encroaching upon or extending over into the land of respondents approximately 20 inches. The court further found that the said re-routed ditch was constructed by appellants in such a manner and with so great a fall below said stop-gate that it caused the bottom of said ditch to wash away, and would in time, if so maintained by appellants, cause the banks to fall away adjacent to respondents' land and cause great damage to respondents' land; and the court found further that the construction and maintenance of said stop-gate on respondents' land constituted a continuing trespass on respondents' said land.

The judgment as to Count Two ordered appellants to remove from respondents' land the concrete portions of the stop-gate installed by them in said ditch, and enjoined them ''from constructing or maintaining the said irrigation ditch along the boundary line between plaintiffs' and defendants' land where defendants changed the course of said ditch from its point of entry into their lands from plaintiffs' said lands from the course over which said ditch had heretofore run in any manner that will cause the lateral support of said ditch on plaintiffs' side of said ditch to fall away or subside''; and said judgment further ordered appellants to ''maintain boards in the drops, or gates, in the said main supply ditch so as to restrain water in said ditch . . . so that it will not flow too rapidly down said ditch and cause said ditch to wash away and erode.''

Appellants argue that this portion of the judgment is likewise void for uncertainty because they are not informed therein how much of the concrete gate encroaches upon the land of respondents. This contention is devoid of merit. All appellants have to do is to change the location of the gate so that no part thereof will be upon the land of the respondents, and appellants can easily ascertain where their boundary line is.

Appellants also argue that the part of the judgment

which orders them to "maintain boards in the drops or gates . . . so as to restrain water in said ditch . . . so it will not flow too rapidly" is so indefinite as to be void. However, Mr. Sherman, the engineer, testified that the flow of water could be so controlled by the use of such boards that the danger of washing respondents' land would be greatly reduced, and it is clear to us that this clause was incorporated in the judgment to compel appellants to so control the flow of the water in said ditch that respondents would not be damaged. If the court had not believed from the evidence that the water could be so controlled, it would no doubt have ordered appellants to put the re-routed ditch back in its former location, as the evidence showed that it did not damage respondents' land until re-routed by appellants. In fact, the findings as to this count recite that appellant stated in open court that they "since the commencement of the said trial have installed certain boards in said concrete box . . . and in certain boxes in said ditch having for their purpose the retaining of the water in said ditch so that it would not flow too rapidly down said ditch and cause said ditch to wash away and erode both above and below said concrete box." We find no uncertainty in this part of the judgment.

█ Appellants argue further that the judgment as to Count Two must be reversed because the court has by mandatory injunction required appellants to remove a portion of a wing of a headgate encroaching on respondents' land some 15 to 20 inches, which headgate, appellants assert, causes no damage. In support of this contention appellants cite numerous cases, most of which are cited in the case of *Ukhtomski* v. *Tioga Mutual Water Co.,* 12 Cal.App.2d 726 [55 P.2d 1251], also cited by them. In that case the court said at page 728:

"The remedy of injunction is a drastic one and where its issuance will work an inequitable burden upon the defendant, the court may, in the exercise of a sound discretion, refuse to grant it where the injured party may be adequately compensated in damages. (*Heilbron* v. *Fowler etc. Canal Co.,* 75 Cal. 426 [17 P. 535, 7 Am.St.Rep. 183].) The principle is aptly illustrated in the so-called 'encroachment cases' where one party builds his wall partly on the land of his neighbor. It being shown that the injury suffered by such encroach-

ment is small and the harm to be suffered by compelling its removal great, the courts have uniformly refused to issue an injunction, leaving the complaining party to his action for damages. (*Rothaermel* v. *Amerige*, 55 Cal.App. 273 [203 P. 833]; *Blackfield* v. *Thomas Allec Corp.*, 128 Cal. App. 348 [17 P.2d 165]; *McKean* v. *Alliance Land Co.*, 200 Cal. 396 [253 P. 134].) It is true, as pointed out by appellants, that the amount of land taken in the decisions cited, *supra*, is considerably less than that here involved. This difference is merely one of fact, however, and does not change the legal principle involved that an injunction should not issue where its issuance would cause serious harm to the defendant and the injury caused by his inadvertence and mistake can be fully compensated by damages.''

Respondents do not question the rule just stated but contend that it is not applicable to the instant case, and we agree with respondents. Appellants have without right built a concrete box partly upon the property of respondents and it cannot be said that an injunction compelling them to move it so it will be entirely upon their own property will impose an inequitable burden upon appellants. It is only in cases where it would involve great difficulty and expense to relieve a trivial encroachment causing only slight damage that a court is justified in refusing a mandatory injunction where one party has invaded the property rights of another. Boundary lines are still boundary lines and an adjoining landowner may not without right build a concrete stop-gate in a ditch so that it extends over into and encroaches upon the property of his neighbor, and then prevent his neighbor from securing an injunction ordering its removal to the extent that it does encroach.

As hereinbefore set forth in detail the judgment as to Count Four ordered appellants to restore the drainage ditch to the condition it was in previous to the construction of the wooden box therein; that the floor of said wooden box be lowered to a height not greater than the floor of the concrete box in said ditch, and that appellants be forever enjoined from maintaining any obstructions in said ditch higher than the bottom of said old concrete box.

■ Appellants argue that the rights of respondents as to said drainage ditch were fixed as of December 11, 1934, the date of the compromise agreement, and point out that

such agreement contains a clause which provides that "no part of the bottom of said drain ditch or structures therein shall be raised or allowed to fill to a greater height than that existing at, or previous to this date," and that there was no evidence that the floor of the wooden box was raised or the ditch allowed to fill in after that date. Appellants contend that, therefore, respondents were not entitled to a judgment that the floor of said box be lowered, even though the evidence showed that the bottom of the wooden box constructed by appellant was 18 inches above the bottom of the old concrete box and effectively prevented the drainage of the low land of respondents through said ditch, as said land had been drained for more than twenty years.

The entire paragraph of the compromise agreement relating to the drainage of respondents' land is as follows:

"The parties of the first part grant to the parties of the second part, their heirs, assigns and successors, the perpetual right to flow drainage water down through the ditch now constructed upon the land of the parties of the first part for the purpose of draining excess water from the land of the parties of the second part down through the ditch on the land of the parties of the first part and from thence into the existing ditches or drains now in use, provided, however, that at no time shall the flow of drainage water exceed four cubic feet per second of water, and the parties of the second part, in the drainage of their said land into said ditch, shall use extreme care and caution so that said drainage water will not become bunched and none of said drainage water, as it flows onto the land of the parties of the first part, shall exceed four cubic feet per second. No part of the bottom of said drain ditches or structures therein shall be raised or allowed to fill to a greater height than that existing at, or previous to this date."

It is quite clear to us, as it no doubt was to the trial court, that a proper construction of said paragraph was that respondents should have the right to continue to drain their excess water up to four cubic feet per second "down through said ditch" and "down through the land" of appellants, and that it was not the intention of anyone that respondents should only be given the right to drain their excess water into the ditch and then have appellants maintain in said ditch an obstruction which prevented the water from draining through, thereby preventing the drainage of respondents' land. To believe that appellants had any other intention would be to

attribute to appellants a degree of bad faith bordering on deliberate deception. We believe that the trial court was fully justified under the agreement and under the evidence in ordering appellants to lower the bottom of the wooden box to the level of the bottom of the old concrete box, which had fixed the level of the bottom of the ditch for many, many years, and in enjoining appellants from maintaining any obstruction in said ditch higher than the bottom of said old concrete box.

Appellants contend also that after the agreement of December 11, 1934, respondents changed their mode of checking their land and irrigating it, and that this created a new and additional burden and an increase in the amount of drainage, and that the court "erred in compelling defendants to change their ditch and box therein to accommodate an additional burden." The answer to this contention is that Mr. Sherman testified that such change in method of irrigation did not increase the burden of drainage, but, if anything, lessened it; also the fact is that the agreement itself limits the drainage to four cubic feet per second.

Over the objection of appellants the court admitted evidence showing that for many years the said drainage ditch was used to drain the excess water from the lands of respondents and that said excess water had drained down through said ditch and down through the land now owned by appellants. Appellants contend that the admission of this line of testimony was error because it varied the terms of a written contract. This contention is without merit. It was quite proper for the trial court to receive such evidence to aid it in determining what land was to be drained, what the contract referred to, or what the height of the ditch bottom and structures had been previous to the date of the contract. Such evidence does not contradict but does aid in understanding the written agreement.

Appellants contend also that the judgment as to Count Four is void for uncertainty, but it is quite clear to us that all that is required of appellants is that they lower the bottom of the wooden box to the level of the bottom of the old concrete box, and refrain from maintaining in said ditch any obstructions that will prevent the excess water of respondents from draining down through said ditch and down through the land of appellants. There is nothing uncertain or indefinite about this part of the judgment.

The final contention of appellants that we shall dis-

cuss is that the evidence is insufficient to justify the finding, and the judgment based thereon, that respondents were damaged in the sum of $500 for loss of bean crops in 1935 and 1936. The evidence shows that the land of respondents was farmed by a tenant on a crop share basis but the record is silent as to what the share of respondents was. The tenant did not join in the action nor is there any allegation or proof that it was brought in his behalf also. Consequently respondents could only be damaged to the extent of their share in the crop, and could only recover for their share, and there is nothing in the record to show what that share was. The evidence showed that in the years 1935 and 1936 ''around 2 acres or so'' of beans were destroyed because the drainage of land was prevented by appellants; that the average production of this portion of the land was 20 to 25 sacks of beans per acre when there was drainage; that the market price of beans in 1935 was $4 a sack, and in 1936, $6.05 a sack. There was no evidence as to what the cost of harvesting and marketing was in the neighborhood during those seasons, and consequently there was no evidence as to what amount should be deducted from the market value.

In the case of *Teller* v. *Bay & River Dredging Co.*, 151 Cal. 209 [90 P. 942, 12 Ann.Cas. 779, 12 L.R.A. N.S 267], the court said at page 213:

''The true rule in arriving at the value at the time of destruction is that laid down by the trial court and abundantly supported by authority. The Supreme Court of Utah well states the proposition (*Lester* v. *Highland Boy Gold Min. Co.*, 27 Utah, 470 [101 Am.St.Rep. 988 [1 Ann.Cas. 761], 76 P. 341]): 'In cases of destruction of growing crops it is proper and important to introduce and admit evidence showing the kind of crops the land is capable of producing, the kind of crops destroyed, the average yield per acre of each kind on the land not destroyed and on other similar lands in the immediate neighborhood, cultivated in like manner, the stage of growth of the crops, at the time of injury or destruction, the expense of cultivating, harvesting and marketing the crops, and the market value at the time of maturity, or within a reasonable time after the injury or destruction of the crops. And,' proceeds that court, 'while all such evidence may be considered by the jury in determining the amount of damages, if any, still the true measure of compensation is the value

of the crops in the condition they were in at the time of their injury or destruction.' In *Shoemaker* v. *Acker*, 116 Cal. 239 [48 P. 62], the introduction of such evidence as the means of arriving at value is distinctly approved, and the same proposition is recognized as containing the true element for determining damage in *Ellis* v. *Tone*, 58 Cal. 289. And that such is the generally accepted rule is abundantly established. (8 Am. & Eng. Ency. of Law, p. 330; Jones on Evidence, sec. 384; Sutherland on Damages, secs. 120, 1023; Sedgwick on Damages, sec. 191.)'' (See also *Dennis* v. *Crocker-Huffman etc. Co.*, 6 Cal. App. 58 [91 P. 425].)

We must, therefore, agree with appellants' contention that the evidence is insufficient to sustain that part of the judgment awarding respondents damages in the sum of $500 for loss of bean crops.

In view of the foregoing, the judgment is affirmed in all respects except as to the portion thereof awarding respondents damages in the sum of $500, and as to such portion the judgment is reversed and a new trial granted as to the issue of damages only, with directions to the trial court to ascertain the amount of damages sustained by respondents, in accordance with the views herein expressed, and thereupon to enter judgment in favor of respondents and against defendants for such amount. Appellants and respondents are each to bear their own costs on appeal.

Thompson, J., and Adams, P. J., concurred.