[Civ. No. 7466.   Third Dist.   June 22, 1948.]

MANUEL G. FURTADO, Respondent, v. C. R. TAYLOR et al., Appellants.

MANUEL G. FURTADO, Respondent, v. E. J. FREDERICK et al., Appellants.

T. B. Scott and W. Coburn Cook for Appellants.

Hawkins & Hawkins for Respondent.

ADAMS, P. J.—Plaintiff brought two actions seeking to quiet his title to an easement for a ditch across defendants' lands, which ditch he alleged had been destroyed in part by defendants. He also prayed that defendants be compelled to restore the portions of said ditch which they had destroyed, that they be enjoined from interfering with same, and that he be awarded damages for injuries resulting from the alleged acts of defendants.

Defendants answered denying generally the allegations of the complaint, including a denial that defendants Taylor had destroyed, covered up or filled in a portion of the ditch as alleged in the complaint, or would unless restrained keep same filled up, or render it useless to plaintiff, and a denial that defendants Frederick had, within five years prior to commencement of the action, filled in a portion of the ditch. They also alleged that the ditch had become valueless to plaintiff by reason of recent plans for irrigation of his land by the improvement district in which it is located, asserted that it is impossible to irrigate plaintiff's lands from said ditch, and, finally, that defendants have acquired title to the ditch by adverse possession.

The trial court found in favor of plaintiff and entered a decree quieting his title to the claimed easement, enjoining

defendants from interfering with the said ditch, and requiring them to restore it to the condition in which it existed at the commencement of the action. Plaintiff having withdrawn his claim for damages, none were awarded.

On this appeal defendants contend that the evidence is insufficient to support the judgment, that the trial court committed error in excluding certain evidence offered by them, that the decision is against public policy, and that the mandatory provisions of the decree are erroneous.

The evidence shows that all of the lands now owned by the respective parties, as well as certain adjoining lands, were acquired by Turlock Garden Land Company, a corporation, prior to 1911. In order to get water for the irrigation of its said lands that company acquired rights of way for the purpose of taking water from the Turlock Irrigation District within the limits of which its lands were located. In 1913, it constructed a ditch from the Irrigation District's lateral 3, which ditch ran southward from said lateral through the northwest quarter of section 1, T. 5 S., R. 8 E., M.D.B.&M., and about 200 feet into the southwest quarter of said section 1, to a point which is designated in this action as "2." Thence it ran westward about 1,588 feet to point "3," thence south across the southwest quarter of said section 1, about 600 feet to a point designated as "4," at which point it turned in a southeasterly direction about 2,000 feet to a point designated as "5," thence in the same direction to point "6" which is on the easterly line of the quarter section a short distance north of the southerly line along which line is a road known as the Monte Vista Road. From point "6" the ditch continued due south into section 12, T. 5 S., R. 8 E., M.D.B.&M.

The lands owned by defendants Taylor lie in the southwest quarter of section 1 above described, and consist of 80 acres (the north half of the southwest quarter) acquired by them in 1927, and 60 acres (the SW¼ of the SW¼ and the W½ of the SE¼ of the SW¼ of section 1) acquired by them in 1943. The tract originally acquired by them had passed from the Turlock Company through several parties before coming into the possession of the Taylors, but it is conceded that the various deeds of transfer contained a reservation for the ditch in controversy reading, "subject, however, to right of way for use and benefit of party of first part, its successors and assigns for purpose of digging, maintaining, cleaning and operating

one or more ditches or canals to flow water therein for use upon said lands and adjoining lands in the usual and practical manner and all rights necessary and incidental to the full enjoyment of this reservation are also reserved.'' The deed conveying the 60 acres acquired in 1943 was executed by the Turlock Company and contained a similar reservation, together with the additional proviso: ''The inclusion of said land hereby conveyed in an improvement district of Turlock Irrigation District shall not in any way limit, restrict or obstruct the rights hereby reserved to Grantor.''

The land belonging to defendants Frederick consists of the east one-half of the southeast quarter of the southwest quarter of section 1, and was granted by the Turlock Company to Isobel H. Allison in 1913, the deed containing the same reservation contained in the other deeds above mentioned. After passing through several hands it was acquired by the Fredericks in October 1934.

Plaintiff's lands lie in section 12, T. 5 S., R. 8 E., M.D.B.&M., and consist of the northeast quarter of the northwest quarter and the east half of the west half of the northwest quarter of said section abutting upon the Monte Vista Road on the north. They were acquired by him in January, 1944, directly from the Turlock Company.

The ditch constructed by the Turlock Company in 1913 therefore crosses both of the Taylor tracts and also the Frederick tract, and extends to the lands of plaintiff, and there is evidence sustaining the finding of the trial court that plaintiff's lands are susceptible of irrigation therefrom though they had, prior to the commencement of this action, been used for dry pasture only, without irrigation.

At the trial defendant Taylor testified that when he acquired his original tract in 1936 there was a ditch across it, and that there was evidence of it down to the Monte Vista Road. He stated that it was in disrepair, but that he used it for irrigation on his own property. He testified, however, in defense of the action, that approximately 10 years before he had filled in a part of the ditch—about 100 feet—where it crossed his land—''pulled the ditch away so there was no ditch there''—and planted the area where it had been to alfalfa and/or corn and had continued to raise crops on it for about 10 years without objection or interference by anyone; and that he had paid taxes upon his land during all those years, though the easement was not separately assessed. It is upon

that testimony that said defendant relies to sustain his claim that he acquired the right to use his said land freed of the easement.

Defendant Frederick makes a like claim, his testimony being that in 1936, after he had tried unsuccessfully to get water onto his land through the ditch, he had "pulled away" possibly 200 feet of it, and farmed over it thereafter—put it in alfalfa from 1936 to 1944. He also stated that no one ever objected to his doing so; also that he had paid taxes on his land, though the ditch, or easement therefor, had not been separately assessed.

The trial court found that defendants had used the portions of the ditch aforesaid for the growing of crops and that they had been in the use and possession of same for more than five years prior to the commencement of the action; but it also found that defendants' use had not been hostile to the plaintiff or his predecessor in interest, had not been open or notorious, or under claim of right, and that none of the defendants had ever asserted any claim to said ditch adverse to plaintiff or his predecessors in interest.

This conclusion of the trial court cannot be said to be without ample support in the evidence. There is no evidence on the part of defendants that they ever asserted to anyone any right to use the portion of the ditch for cultivation, or that they ever asserted to anyone any claim that they were the owners of the land free from the easement. They rely solely upon statements that they had farmed the areas where they had destroyed the ditch and that their operations were visible.

Plaintiff called as a witness Mr. Elfving, secretary-treasurer of the Turlock Company and a director since 1934, who testified that he had attended all meetings of the directors of said company and that no resolution to abandon the ditch in controversy had ever been adopted by such directors, and that it had never been abandoned; that he did not know of Taylor's closing any part of the ditch, and though, probably in 1943, he had talked with Taylor about difficulties in getting water through it, and Taylor had said that the course which it followed was impracticable, Taylor had never made any claim of right to the ditch nor did he know that Taylor had closed any portion of it until the time of the trial; that he had never at any time seen that Taylor had closed any part of it. There is no evidence that either Taylor or Frederick had ever in-

formed anyone that they had closed a portion of the ditch, or that plaintiff knew that they had done so.

That an easement acquired by grant or by a reservation having the effect of an implied grant is not lost by disuse is well established in this state and elsewhere. (*Parker* v. *Swett,* 188 Cal. 474, 480 [205 P. 1065]; *Parker* v. *Swett,* 40 Cal.App. 68, 74 [180 P. 351]; *Currier* v. *Howes,* 103 Cal. 431, 437 [37 P. 521]; *Copeland* v. *Fairview Land & Water Co.,* 165 Cal. 148, 167 [131 P. 119]; *City of Vallejo* v. *Scally,* 192 Cal. 175, 177 [219 P. 63]. Also see cases cited in 66 A.L.R. 1100 et seq.)

The essential elements for the establishment of a title by adverse possession are set forth succinctly in *West* v. *Evans,* 29 Cal.2d 414, 417 [175 P.2d 219], as follows: (1) Possession must be by actual occupation under such circumstances as to constitute reasonable notice to the owner; (2) possession must be hostile to the owner's title; (3) the holder must claim the property as his own, either under color of title, or claim of right; (4) possession must be continuous and uninterrupted for five years; (5) the possessor must pay all of the taxes levied and assessed upon the property during the period. And it was there said that actual possession means "a subjection to the will and dominion of the claimant," and that it must be established by the assertion of title, coupled with acts of ownership which proclaim to the world and bring notice to the owner that a right is claimed in the land over which the claimant is seeking to exercise dominion.

In order for the statute of limitations to run against a party there must be "definite and positive evidence" of an adverse claim and an adverse holding (*Parker* v. *Swett,* 40 Cal.App. 68, at page 73 [180 P. 351]), and the burden is upon claimants of a prescriptive right to prove same by the clearest and most satisfactory evidence (*Pyramid Land etc. Co.* v. *Scott,* 51 Cal.App. 634, 646 [197 P. 398]; *Crain* v. *Hoefling,* 56 Cal.App.2d 396, 402 [132 P.2d 882]).

In *Janke* v. *McMahon,* 21 Cal.App. 781, 784 [133 P. 21], it was held that mere occupancy, where there is no evidence that the occupant ever declared that he owned the land or that he intended to retain it as against the holder of the legal title, is not necessarily adverse. In *Enos* v. *Murtaugh,* 47 Cal. App.2d 269, 273 [117 P.2d 905], the court said that in order to be adverse the possession of a claimant must operate as an ouster of the holder of the true legal title. And in *Hibberd*

v. *McCosker*, 55 Cal.App. 568, 569 [203 P. 810], it is asserted that the adverse character of a holding, in order to bar the claim of the holder of the legal title, must be manifested to the owner; that he must be notified in some way that the possession is hostile to his claim. And in *Jones* v. *Tierney-Sinclair*, 71 Cal.App.2d 366 [162 P.2d 669], the rule is stated that an adverse claim must be asserted in such manner that the owner may know of the claim. And it is said in 1 American Jurisprudence, page 897, section 188, that "The mere fact that one is in possession of land, no matter how long such possession is continued, will not bar a recovery by the true owner thereof, unless the occupant asserts an exclusive ownership in himself, for, in the absence of such a claim, the law will presume his possession to be in subservience to the legal title." To the same effect see *Pacific Gas & Electric Co.* v. *Crockett L. & C. Co.*, 70 Cal.App. 283, 289 [233 P. 370].

As the trial court found that defendants' possession had not been hostile to plaintiff or his predecessors, had not been open or notorious, or under a claim of right, and that none of the defendants had ever asserted any claim to the ditch adverse to plaintiff or his predecessors, and the evidence lends ample support to its conclusions, they are binding upon this court whatever evidence there may be which would tend to support a contrary conclusion.

As for appellants' argument that the trial court erred in excluding evidence in regard to the organization of an improvement district and the construction by it of a new and different ditch over and across defendants' land, by means of which ditch defendants claim that plaintiff could irrigate his land, appellants cite no authority in support of their contention that the exclusion of such offered proof was erroneous; and we are unable to see what bearing it would have upon plaintiff's right to the easement which he claims and which belongs to him as the owner of the dominant tenement and which he acquired by his deed, especially since it is not shown nor claimed that he had acquired, or even could acquire any easement or right in the new ditch. It is scarcely within the province of the courts to compel the owner of an easement in an existing ditch to surrender it because the owners of the servient tenement believe that the owner of the dominant tenement could get water from another source with less burden upon the servient estates. See *Edgar* v. *Pensinger*, 73 Cal.App.2d

405, 414-415 [166 P.2d 354]; *Hannah* v. *Pogue,* 23 Cal.2d 849, 854-855 [147 P.2d 572].

Appellants' next contention is that the trial court erred in requiring, by its decree, that defendants restore the ditch to its former condition, as it existed at the commencement of this action, as shown on the profile map of said ditch, which was introduced in evidence as plaintiff's Exhibit 25 on the trial of this action. In their brief appellants assert that the court made no finding that defendants filled in any part of the ditch after this action was commenced, and therefore it had no basis for an order requiring them to restore it to its condition when the action was commenced. Appellants do not assert, however, that they did not destroy portions of the ditch after the commencement of the action. Their own testimony shows that they did. Frederick testified that he had had some work done with heavy machinery during the past two weeks, and they had torn the ditch out; and Taylor testified that within the past 60 days he had "pulled away" a portion of the ditch—probably 300 or 400 feet—but had not finished the work. As this action was filed in June, 1944, and was tried in January, 1947, it is obvious that had the trial court made findings in this behalf they would have been adverse to defendants' present contention. The profile map of the ditch referred to by the court was made by Mr. Brookey, a surveyor, after a survey in 1944 with additional data secured just before the trial; and this witness also testified that appearances indicated that a portion of the ditch had been "knocked out" within the past week. Under such conditions the court was justified in issuing the injunction and in ordering defendants to restore the ditch to the condition in which it existed at the commencement of the action. (*Taft* v. *Washington,* 29 Cal.App. 197, 199 [154 P. 1073]; *Allen* v. *Stowell,* 145 Cal. 666, 668 [79 P. 371, 104 Am.St.Rep. 80, 68 L.R.A.N.S. 223]; *McRae* v. *Blakeley,* 3 Cal.App. 171, 174 [84 P. 679]; *Western etc. Co.* v. *Knickerbocker,* 103 Cal. 111, 117 [37 P. 192]; *Morris* v. *George,* 57 Cal.App.2d 665, 676-677, 680 [135 P.2d 195]; *Island Reclamation District No. 776* v. *Floribel Alfalfa Syndicate,* 167 Cal. 467, 471 [140 P. 4]; 14 Cal.Jur. 223-224; High on Injunctions (4th ed.), § 708, p. 679; 28 C.J.S. § 107(f), p. 795.)

Finally, appellants urge that the court's finding that it is possible for plaintiff to irrigate his land from said ditch, and unless he is permitted to do so he will suffer great and

irreparable injury, is contrary to the evidence. There may be a conflict of the evidence on this subject but Mr. Brookey testified that though the ditch would have to be rebuilt and repaired in part, a very good ditch could be built there and a steady flow of water effected. It cannot be said, therefore, that there is no evidence to sustain the trial court's finding in this connection.

We find no reversible error in the record, and the judgment of the trial court is affirmed accordingly.

Thompson, J., and Peek, J., concurred.

A petition for a rehearing was denied July 15, 1948, and appellants' petition for a hearing by the Supreme Court was denied August 19, 1948.