[Civ. No. 2888. Fifth Dist. May 6, 1977.]

LORREN J. KUFFEL et al., Plaintiffs and Appellants, v.
SEASIDE OIL COMPANY, Defendant and Respondent.

556

558

**COUNSEL**

Robert R. Elledge for Plaintiffs and Appellants.

Price, Martin & Crabtree and C. Rex Boyd for Defendant and Respondent.

**OPINION**

**FRANSON, J.**—This appeal is from a judgment on the retrial of the issue of damages arising out of the wrongful termination of a contract. The judgment in favor of appellants is for $16,775.11, compensatory damages and $5,591.70, punitive damages.[1]

---

[1]The first trial resulted in the award to appellant of $212,269.48 in general damages and $10,000 in punitive damages. In *Kuffel v. Seaside Oil Co.* (1970) 11 Cal.App.3d 354 [90 Cal.Rptr. 209], this court reversed the trial court on the damages issue and remanded the cause for retrial on that issue.

Appellants make two contentions: First, they claim that there is insufficient evidence to support the compensatory damage award. Appellants argue that they should have been awarded compensatory damages in the sum of $49,508.56. Second, appellants claim that the trial court committed reversible error in not making special findings on a material issue of fact, as required by Code of Civil Procedure section 634.

For the reasons to be stated, we hold both contentions to be without merit.

The pertinent facts on the question of compensatory damages are as follows: appellants have been engaged in the business of selling gasoline and related products from a service station in Riverbank, California, for approximately 30 years. They resold gasoline furnished by respondent Seaside Oil Company for approximately 20 years from 1946 to 1966.

In April of 1960 appellants negotiated a new 10-year contract with respondent. Under the contract, they received in addition to the basic margin on gasoline of 4 or 4½ cents per gallon a 2-cent rental allowance and a 1-cent delivery allowance. This arrangement continued until May 18, 1966. On that date, upon representations by respondent that appellants would get a new contract on the same terms and conditions as the old, the contract was terminated. At the time of termination, the contract had an unexpired term of four years and eight days. A new contract was never received by appellants and deliveries of Seaside gasoline were terminated.

When respondent cut off appellants' gasoline supply, appellants acquired Goodrich gasoline from June 1966 through May 1968. In June 1968 appellants became Mobil Oil Company dealers and remained Mobil dealers for the remainder of the two-year unexpired term of the contract with respondent.

The proper measure of compensatory damages in this case is stated in *Kuffel* v. *Seaside Oil Co., supra,* 11 Cal.App.3d at page 366.

"It is clear that [appellants] were entitled to be compensated for the loss of actual or prospective profits naturally and directly resulting from the fraudulent termination of Seaside's sales contract [citation]. The court, therefore, could properly have awarded [appellants] the difference between the net profits they could reasonably have anticipated making from the sale of Seaside gasoline for the unexpired term of the sales

contract and the net profits they actually made and reasonably could have anticipated making from the sale of Goodrich . . . brand gasoline [or Mobil brand gasoline] over the same period." (11 Cal.App.3d at p. 361.)

■ "It is fundamental that in awarding damages for the loss of profits, net profits, not gross profits, are the proper measure of recovery [citations]." (11 Cal.App.3d at p. 366.)

On retrial, the court followed *Kuffel* and made the following findings of fact and conclusions of law on the issue of damages:

### Findings of Fact·

"No. 3. In the market conditions prevailing during said period, the net profits [appellants] could have reasonably anticipated making from the sale of Seaside gasoline at their station for the unexpired term of the sales contract would have exceeded the net profits they actually made from the sale of [Goodrich] and Mobil gasolines there over the same period, by the amount of $16,775.11.

"No. 4. Compensatory damages sustained by [appellants] are fixed at $16,775.11.

### Conclusions of Law

"No. 5. To compensate the losses of actual and prospective profits naturally and directly resulting from the fraudulent termination of the Seaside sales contract, the [appellants] are properly entitled to receive compensatory damages in an amount equal to the difference between the net profits they could reasonably have anticipated making from the sale of Seaside gasoline for the unexpired term of the sales contract and the net profits they actually made from the sale of [Goodrich] and Mobil gasolines, respectively over the same period."

The trial court did not include in its findings or conclusions the calculations from which the $16,775.11 figure for compensatory damages was derived. However, in its announcement of intended decision it noted that it was adopting respondent's evaluation of compensatory damages as set forth in respondent's exhibit Z.[2]

---

[2] A copy of respondent's exhibit Z is attached as an appendix to this opinion.

## DISCUSSION

■ Appellants are entitled to be compensated for the loss of actual or prospective profits naturally and directly resulting from the wrongful termination of its sales contract by respondent. (*Kuffel* v. *Seaside Oil Co., supra,* 11 Cal.App.3d at p. 361.) ■ This means that appellants are entitled to the difference between the net profits they could reasonably have anticipated making from the sale of Seaside gasoline for the unexpired term of the sales contract and the net profits they actually made from the sale of Goodrich brand gasoline and Mobil brand gasoline over the same period. (*Kuffel* v. *Seaside Oil Co., supra,* 11 Cal.App.3d at pp. 361, 366.)

The trial court purported to apply the correct rule by adopting respondent's exhibit Z as the proper method of calculating the damages. Thus, the issue is whether respondent's exhibit Z and the exhibits from which it was derived constitute substantial evidence to support the trial court's award of compensatory damages in the amount of $16,775.11.

Exhibit Z was prepared by John Pearson, manager of the administrative services for respondent company. Mr. Pearson computed appellants' loss of net profits over the four-year period remaining on their contract with respondent by calculating the net profits appellants could reasonably have anticipated making from the sale of respondents's gasoline for the unexpired term of the contract and the net profits they actually made from the sale of Goodrich and Mobil brand gasoline over the same period.

Appellants' exhibit 16 and respondent's exhibit Q provided the actual and projected price, volume and cost for the period of June 1966 through May 1968, when appellants sold Goodrich gasoline. Appellants' exhibits 15 and 16 and respondent's exhibit Q provided these amounts for the period June 1968 through May 1970, when appellants sold Mobil gasoline. Appellants' exhibit 20 provided the expenses for the entire period in question, i.e., June 1966 through May 1970.

The projected price, volume and wholesale cost of Seaside gasoline for the four-year period in question were computed on respondent's exhibit Z as follows:

First, for the period in which appellants sold Goodrich gasoline the projected retail price of Seaside was equated with the actual retail price of Goodrich gasoline charged by appellants. (Respondent's exhibit Q.)

The projected volume of Seaside which appellants would have sold was also equated with the actual volume of Goodrich sold by appellants. This was reasonable in light of testimony that Goodrich and Seaside gasolines were of equal quality and customer appeal and were priced competitively with one another.

Second, for the period in which appellants sold Mobil gasoline the projected retail price for Seaside was equated with the actual retail price charged by another Seaside dealer in the same area. (Respondent's exhibit Q; appellants' exhibit 1.) This was reasonable in light of the fact that retail prices for Mobil, a major brand, are consistently higher than the retail prices charged by independent dealers such as Seaside. Therefore, it would have been inaccurate to use the actual retail price charged for Mobil as the projected retail price for Seaside. Because the Seaside dealer was in the same pricing area as were appellants, it was reasonable to use his retail prices to project those for appellants.

As to the projected volume of Seaside which appellants would have sold during the period they were selling Mobil, an average was taken of the actual volume of Seaside sold during appellants' last year with Seaside plus the volume of Goodrich sold by appellants during their two years with Goodrich. Again, this was reasonable because Seaside and Goodrich were both independents and it could be expected that a retailer would sell approximately the same volume of either. Respondent points out that this volume projection for Seaside is higher than the actual amounts of Mobil sold during the period June 1968 through May 1970. Such a projection is favorable to appellants since a higher projection for Seaside makes for a greater loss of profit.

Finally, as to the projected wholesale cost of Seaside gasoline during the entire four-year period in which appellants sold Goodrich and then Mobil gasoline, the following computation was made: Seaside's wholesale asking price ("dealer tank wagon price") was used as a base, with credit off for all special allowances or subsidies and dealer pricing programs to which appellants would have been entitled, assuming the sales contract with Seaside had continued in effect through May of 1970. Specifically, appellants were granted: (1) the 2-cent rental allowance for the entire four year period; (2) special allowances, including the 1-cent delivery allowance up to May 1, 1967, and thereafter allowances provided by a new Seaside pricing program adopted for all its dealers in place of previous pricing programs with special allowances, which was more advantageous to appellant; and (3) all wholesale price changes. Such a computation closely approximated the wholesale cost of Seaside

gasoline which appellants would have incurred had Seaside honored the remaining four-year term of the contract.

In respondent's exhibit Z the difference in annual net profits between appellants' sale of Goodrich and Mobil gasoline from June 1966 through May 1970 and the projected sales of Seaside for the same period came to $16,775.11 and was adopted by the trial court as the amount of compensatory damages. Thus, the calculations set forth in exhibit Z are supported by substantial evidence.

Appellants' argument that their compensatory damages should be at least $49,508.56 is based on the fallacious assumption that the measure of compensatory damages is not the difference in *net profits* but rather the difference in only one of the cost components of the respective products—the allowances received by appellants. The proper measure of damages is the loss of net profits and not any mere difference in special allowances. (See *Kuffel v. Seaside Oil Co., supra,* 11 Cal.App.3d at p. 366.) Stated otherwise, any loss in net profits over the four-year period in question is determined not on a comparative cost basis, or any component thereof, but rather on the comparative net profits from the sale of Goodrich and Mobil actually earned and those from the sale of Seaside which would have been earned. We point out that the allowances from Seaside were taken into consideration in computing projected profits over the four-year term as set forth in respondent's exhibit Z.

Appellants' contention that their annual volume of sales of Seaside over the unexpired term of the contract would have increased at an annual rate of 28.44 percent compounded over their last year's actual volume with Seaside is at best conjectural. In *Kuffel v. Seaside Oil Co., supra,* this court held that a 17.9 percent annual increase in volume proposed at the first trial was speculative and failed to take into account limitations imposed by potential population and traffic increases. (See 11 Cal.App.3d at pp. 366-367.) Moreover, appellants fail to explain why they would have tripled their volume of Seaside over the short span of four years while in the same market conditions their actual volume of Goodrich and Mobil declined. A reasonable inference can be derived from the record that changes in population, roadways, gasoline consumption patterns and other factors would have the same general effect on appellants' sales whether they sold Seaside or the Goodrich-Mobil brands of gasoline.

We conclude there is substantial evidence to support the compensatory damage award by the trial court.[3]

■ Appellants next contend that the judgment must be reversed because the trial court failed to make special findings which fully disclosed its method of determining the ultimate issue of damages.

■ ■ When findings on material subsidiary issues of fact are requested or when the omission of such findings is brought to the trial court's attention prior to entry of judgment, the trial court is required to make such findings. If it does not do so, it cannot be inferred on appeal that the trial court found in favor of the prevailing party on the issues covered by the requested findings. (Code Civ. Proc., § 634; see *South Bay Irr. Dist.* v. *California-American Water Co.* (1976) 61 Cal.App.3d 944, 992-994 [133 Cal.Rptr. 166]; *Morris* v. *Thogmartin* (1973) 29 Cal.App.3d 922, 927-929 [105 Cal.Rptr. 919].) ■ A "material" issue of fact is one which is relevant and essential to the judgment and closely and directly related to the trial court's determination of the ultimate issues in the case. (Code Civ. Proc., § 634; see *South Bay Irr. Dist.* v. *California-American Water Co., supra,* 61 Cal.App.3d at p. 994.)

■ The purpose of the rule abrogating the doctrine of implied findings where the omitted findings are brought to the trial court's attention is "to alleviate the frustration of losing litigants and their attorneys confronted with noncommunicative trial judges who did not explain their rulings in any memorandum opinion and who frequently (with the aid of successful counsel) couched their findings of fact in terms so 'ultimate' that it was extremely difficult, if not impossible, to determine either the factual basis or legal theory of the decision. . . ." (*DeArmond* v. *Southern Pacific Co.* (1967) 253 Cal.App.2d 648, 658 [61 Cal.Rptr. 844]; *Morris* v. *Thogmartin, supra,* 29 Cal.App.3d at p. 928; 4 Witkin, Cal. Procedure (2d ed. 1971) Trial, § 341, pp. 3142-3144.)

■ ■ A pragmatic limitation on the requirement of findings on subsidiary issues has been imposed as a matter of judicial policy: special findings are not required on every subsidiary matter on which evidence is received at trial, even though the subsidiary matter is relevant to the ultimate issues of fact. (*Coleman Engineering Co.* v. *North American Aviation, Inc.* (1966) 65 Cal.2d 396, 410 [55 Cal.Rptr. 1, 420 P.2d 713].) For example, where damages are the product of many interwoven elements, the trial court is not required to make separate findings on

---

[3]The punitive damage award was fixed at one-third of the compensatory damages, and appellants do not challenge the propriety of this award.

each element (*South Bay Irr. Dist.* v. *California-American Water Co., supra,* 61 Cal.App.3d at p. 995).

In the present case appellants requested six special findings of fact:

"1. To what extent would KUFFELS' sales of SEASIDE gasoline have increased, by gallons and by grade, over the balance of the contract term.

"2. What would KUFFELS' gross profit from sales of SEASIDE gasoline have been for the balance of the contract term.

"3. What was KUFFELS' per gallon overhead cost in selling gasoline during the 6 year period of actual operation under the contract.

"4. What was KUFFELS' per gallon overhead cost in selling gasoline during the most recent 4 year period of actual operation under the contract.

"5. What was KUFFELS' per gallon overhead cost in selling gasoline during the most recent 2 year period of actual operation under the contract.

"6. What would KUFFELS['] net profit from the sales of SEASIDE gasoline have been over the balance of the contract term, had KUFFELS been selling the same."

■ Because the ultimate question in determining the amount of damages was the difference in the net profits that appellants would have earned from the sale of Seaside gasoline if the contract had not been terminated and the net profits they actually earned from the sale of Goodrich and Mobil gasoline, it is clear that the facts concerning any increase in the sale of Seaside gasoline over the balance of the contract term (request No. 1) and the per gallon overhead cost to appellants of Seaside gasoline before the contract was terminated (request Nos. 3, 4 and 5) are subsidiary facts "remote in the chain of determination of the ultimate fact" and do not require special findings. (*South Bay Irr. Dist.* v. *California-American Water Co., supra,* 61 Cal.App.3d at p. 994.) ■ On the other hand, appellants' gross and net profit from the sale of Seaside gasoline over the unexpired term of the contract (request Nos. 2 and 6) are closely and directly related to the determination of the ultimate finding as to the difference in net profits they would have earned under the Seaside contract and what they actually earned from the sales of Goodrich and Mobil gasoline. Hence, the trial court's

failure to make the requested findings on the gross and net profit from sale of Seaside gasoline was error.

We turn now to whether the error in failing to make the requested findings requires a reversal of the judgment.

California Constitution, article VI, section 13, provides in pertinent part "No judgment shall be set aside, . . . , in any cause, . . . for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." The phrase "miscarriage of justice" means that a judgment cannot be reversed unless "the [reviewing] court, 'after an examination of the entire cause, including the evidence,' is of the 'opinion' that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]; see also Code Civ. Proc., § 475.) This rule of appellate review has been applied to find "nonprejudicial error" in civil cases involving the omission of findings of fact. (4 Witkin, Cal. Procedure (2d ed. 1971) Trial, § 343, pp. 3144-3145.)

In the present case, the trial court filed a memorandum opinion in which it set forth the method used in calculating the $16,775.11 compensatory damages suffered by appellants. It indicated that it was adopting respondent's calculation of damages, which is set forth in respondent's exhibit Z. Respondent's exhibit Z shows a projected cost of sales and gross profit on the sale of Seaside gasoline by appellants during the unexpired term of the contract. Thus, by the memorandum opinion appellants were fully advised of the actual findings of the trial court on the subsidiary issues on which it had requested written findings. The salutary purpose of Code of Civil Procedure section 634 was accomplished without the entry of the written findings.

We are mindful of this court's decision in *Morris* v. *Thogmartin,* *supra,* 29 Cal.App.3d at page 930 wherein it is stated: ". . . [The] memorandum [opinion] may be used only for the purpose of explaining and interpreting the findings. The memorandum decision cannot be relied upon to fill the interstices in the findings and conclusions left void by the failure to find pursuant to a properly filed request under section 634. [Citations.]"

This statement, however, does not purport to preclude an appellate court from considering the memorandum opinion for the purpose of

exercising its constitutional duty of ascertaining whether appellant was prejudiced by the error in failing to make the requested findings.

*Union Sugar Co.* v. *Hollister Estate Co.* (1935) 3 Cal.2d 740 [47 P.2d 273], cited in *Morris* v. *Thogmartin, supra,* supports our view of the proper rule. In that case, the Supreme Court carefully distinguished the impermissible use of a memorandum opinion for the purpose of impeaching contrary written findings or using the written opinion to determine whether the written findings are supported by the evidence, from the permissible use of the opinion for the purpose of discovering the process by which the trial judge arrived at his ultimate conclusions. (3 Cal.2d at pp. 749-751.) After observing that the written opinion showed how the trial judge had computed the damages, the Supreme Court stated: "[The written opinion] shows that the court simply took the number of tons of beets which the respondent lost by reason of appellant's improvident farming methods, and the price these beets would have brought had they been produced, and by multiplying this tonnage by the price arrived at the loss or damage sustained by respondent. By this process the court found the damages sustained by respondent to be the precise amount which in its findings of fact it found the respondent had been damaged by appellant's improper farming methods. The opinion of the trial court does not, therefore, impeach any of its findings of fact in the sense that any statement therein is in conflict with any fact found by the court. It simply explains the formal findings and shows the basis on which the court arrived at the amount of damages as fixed." (3 Cal.2d at pp. 750-751; see also *South Bay Irr. Dist.* v. *California-American Water Co., supra,* 61 Cal.App.3d at pp. 964, 995-996; *Wise* v. *Clapper* (1968) 257 Cal.App.2d 770, 777, fn. 2 [65 Cal.Rptr. 231]; *Coakley* v. *Ajuria* (1930) 209 Cal. 745, 749 [290 P. 33].)

We, therefore, hold that although it was error for the trial court not to formally enter the two requested findings, the error does not compel a reversal of the judgment because the memorandum opinion fully sets forth the bases on which the court arrived at its ultimate finding of damages. Thus, appellants have not been prejudiced.

The judgment is affirmed.

Gargano, Acting P. J., and Hopper, J., concurred.

A petition for a rehearing was denied June 2, 1977, and appellants' petition for a hearing by the Supreme Court was denied June 30, 1977.

## Appendix I

## DEFENDANTS' EXHIBIT Z

KUPPEL—GASOLINE SALES
Operating Statements For Years Noted

| | Gasoline Sales | Cost of Sales | Gross Profit On Sales | Expenses | Net Gasoline Profit | Difference in Net Profit |
|---|---|---|---|---|---|---|
| **June 66 thru May 67** | | | | | | |
| Rocket * | $195,030.18 | $159,540.42 | $35,489.76 | $15,679.00 | $19,810.76 | |
| Seaside | 195,030.18 | 151,228.08 | 43,802.10 | 15,679.00 | 28,123.10 | $8,312.34 |
| **June 67 thru May 68** | | | | | | |
| Rocket | 153,653.13 | 119,320.67 | 34,332.46 | 17,564.00 | 16,768.46 | |
| Seaside | 153,653.13 | 120,188.37 | 33,464.76 | 17,564.00 | 15,900.76 | (867.70) |
| **June 68 thru May 69** | | | | | | |
| Mobil | 195,815.28 | 154,284.12 | 41,531.16 | 22,170.00 | 19,361.16 | |
| Seaside | 201,142.44 | 155,557.47 | 45,584.97 | 22,170.00 | 23,414.97 | 4,053.81 |
| **June 69 thru May 70** | | | | | | |
| Mobil | 182,949.97 ** | 142,303.65 | 39,746.32 | 26,138.00 | 13,608.32 | |
| Seaside | 197,753.25 | 152,730.27 | 45,022.98 | 26,138.00 | 18,884.98 | 5,276.66 |
| | | | | | Net Difference | $16,775.11 |

*Rocket is another name for Goodrich.
**This figure should read 182,049.97.