[No. E003301. Fourth Dist., Div. Two. Mar. 14, 1988.]

TRACT DEVELOPMENT SERVICES, INC., Plaintiff and Respondent, v.
JOHN KEPLER et al., Defendants and Appellants.

**COUNSEL**

Reid & Hellyer and William J. Ward for Defendants and Appellants.

Stanley D. Bowman for Plaintiff and Respondent.

**OPINION**

**McDANIEL, J.—**

### INTRODUCTION

Defendants John and Leona Kepler have appealed from a judgment in favor of plaintiff Tract Development Services, Inc. (Tract Development) which declared that Tract Development was entitled to an easement over the Keplers' property and which also awarded Tract Development $12,550 in damages for interference with Tract Development's easement.

FACTS

In 1980, the Keplers purchased some real property near Corona, in what is known as the Temescal Gardens Subdivision. The Keplers' property consists of 12 lots plus a portion of 2 other lots, an alley referred to as Lot T, and the property in question, which is a 20-foot-wide strip of land running along the eastern edge of the Keplers' lots:

This strip of land corresponds to the western half of a 40-foot right-of-way known as Diplomat Avenue. Diplomat Avenue was one of the streets shown on the Temescal Gardens subdivision map recorded in 1924. The portion of Diplomat Avenue in question was never developed or used as a right-of-way. The lots purchased by the Keplers were located in the northeast corner of Temescal Gardens, and represented a small portion of the entire subdivision:

In 1984, Tract Development purchased a number of lots to the east of the Keplers' property:

The property included the eastern half of Diplomat Avenue. Tract Development was aware of the existence of the streets outlined by the subdivision map, and began grading Diplomat Avenue as part of its plan to build homes on the lots it had just purchased.

Thereafter, Daryl Stark, Tract Development's chief executive officer, noticed Mr. Kepler erecting a fence down the middle of Diplomat Avenue. He asked Mr. Kepler to honor the easement as shown on the subdivision map and to relocate his fence, but Mr. Kepler did not do so, and Tract Development thereupon instituted this action.

Judgment was entered in favor of Tract Development, and the Keplers now appeal, contending that the easement purportedly confirmed by the judgment no longer exists, either because (1) Tract Development did not acquire the easement when it purchased its property because it did not purchase with reference to the subdivision deed or because the easement had been excepted by the terms of an earlier deed, or (2) it was extinguished by common ownership of the dominant and servient tenements resulting in a merger of the two, or (3) it was abandoned, or (4) it was terminated by prescription.[1]

In support of these contentions, the Keplers have set out a careful recitation of the chain of title to establish the common ownership of the dominant and servient tenements, and have also set out the evidence purportedly showing abandonment or termination by prescription. Rather than set forth these facts at length here, the relevant evidence will be discussed in connection with each of the points raised by their appeal.

### DISCUSSION

As above noted, the property in question is located in a subdivision, and it is uncontroverted that the initial deeds from the subdivision's creator referred to the subdivision map on which were delineated a network of streets, including Diplomat Avenue.

■ "It is a thoroughly established proposition in this state that when one lays out a tract of land into lots and streets and sells the lots by reference to a map which exhibits the lots and streets as they lie with relation to each other, the purchasers of such lots have a private easement in the streets opposite their respective lots, for ingress and egress and for

---

[1] The appeal raises other points, for example, about the effect of certain statutes related to subdivisions and about the standing of Tract Development to assert the rights of other owners in the subdivision. Our holding on the issues set out above renders unnecessary a discussion of these points.

any use proper to a private way, and that this private easement is entirely independent of the fact of dedication to public use, and is a private appurtenance to the lots, of which the owners cannot be divested except by due process of law. [Citations.]" (*Danielson* v. *Sykes* (1910) 157 Cal. 686, 689 [109 P. 87].)

"When a lot conveyed by a deed is described by reference to a map, such map becomes a part of the deed. If the map exhibits streets and alleys it necessarily implies or expresses a design that such passageway shall be used in connection with the lots and for the convenience of the owners in going from each lot to any and all the other lots in the tract so laid off. The making and filing of such a plat duly signed and acknowledged by the owner, . . . is equivalent to a declaration that such right is attached to each lot as an appurtenance. A subsequent deed for one of the lots, referring to the map for the description, carries such appurtenance as incident to the lot." (*Id.,* at p. 690; see also *Hocking* v. *Title Ins. & Trust Co.* (1951) 37 Cal.2d 644, 650 [234 P.2d 625, 40 A.L.R.2d 1238] ("It is established law in this state that the title to such a lot embraces an easement to use all of the streets disclosed on the subdivision map. . . .") and *Petitpierre* v. *Maguire* (1909) 155 Cal. 242, 246-247 [100 P. 690].) This rule applies regardless of whether the city or county has ever accepted the right-of-ways laid out in the map, and whether or not the right-of-ways have ever been opened or used as streets or highways. (*Petitpierre* v. *Maguire, supra,* 155 Cal. at p. 248.) *Furthermore, the right to an easement created in this manner cannot be lost by mere nonuse, nor because the easement is not necessary for access to the dominant tenement.* (*Id.,* at p. 250.)

■ The Keplers argue, for several reasons, that this rule does not apply to the facts presented here. First, they assert that Tract Development did not purchase its property with reference to the subdivision map. Although the early deeds in the Tract Development chain of title referred to the subdivision map, deeds recorded after 1965, including the deed to Tract Development, referred to a record of survey rather than to the subdivision map. Accordingly, the Keplers urge, Tract Development may not rely on the above cases whose outcomes purportedly depended on the fact that the subsequent deeds by which the plaintiffs held title made specific reference to a subdivision map.

Although it is true that the cases noted above hold that a deed which refers to the subdivision map for description "carries such appurtenance as incident to the lot" (*Danielson* v. *Sykes, supra,* 157 Cal. at p. 690), the converse premise, that a deed which does *not* refer to the map for description does *not* carry the appurtenance as incident to the lot, does not necessarily follow. In point of fact, Civil Code section 1084 provides, "The

transfer of a thing transfers also all its incidents, unless expressly excepted; . . ." and Civil Code section 1104 *specifically* provides that "[a] transfer of real property passess all easements attached thereto, . . ." (See also *Conaway* v. *Toogood* (1916) 172 Cal. 706, 712 [158 P. 200] ("The defendants call attention to the fact that the way to the west was not mentioned in any of the various mesne conveyances through which the claimants trace their title, . . . It is contended, therefore, that the claimants cannot take advantage of the right of way gained by their predecessors. But the rule is well established in this state that an easement as a right of way is incident to the land and passes with it unless expressly excepted by the terms of the deed. . . . [Citations]"), and *Lemos* v. *Farmin* (1932) 128 Cal.App. 195, 199 [17 P.2d 148], to the same effect.) In other words, once such easements for rights-of-way have been created by initial reference to a subdivision map, they pass without subsequent reference unless they are specifically excepted, and we believe that the language in *Danielson* v. *Sykes* which might arguably appear to require subsequent reference in order for such easements to pass was simply a less than felicitous choice of expression.

The Keplers' next argument is that the easement over the relevant portion of Diplomat Avenue *was* expressly excepted when, in 1956, Elvin and Ruth Downs, the then owners of blocks C (the equivalent of the property now owned by the Keplers) and D and E (the equivalent of the property now owned by Tract Development) transferred blocks D and E to Ernest and Bonnie Bill by a deed which referred to Diplomat Avenue "as now abandoned." In connection with this statement in the Downs-to-Bills deed, we note that in 1936, the Downs' predecessor in interest, A. J. Davis, had petitioned the board of supervisors to abandon portions of several streets in the subdivision, including the portion of Diplomat Avenue involved here, and that the board of supervisors had passed a resolution to this effect.

Unfortunately for the Keplers, the reference to Diplomat Avenue in the Downs-to-Bills deed "as now abandoned" is not the equivalent of an express exception of the easement here. As stated in *Danielson* v. *Sykes, supra,* 157 Cal. 687, the initial reference to the subdivision map created a *private* easement entirely independent of the fact of dedication to public use. The abandonment by the board of supervisors could not have the effect of extinguishing this private easement (see *Anderson* v. *Citizens Sav. etc. Co.* (1921) 185 Cal. 386, 393-396 [197 P. 113]), nor did the reference to Diplomat Avenue "as now abandoned" evidence an unambiguous intent on the part of the Downs to except the private easement from the grant to the Bills.

The Keplers also urge that the easement was extinguished by the common ownership of the dominant and servient tenements which resulted

in a merger. (Civ. Code, §§ 805, 811, subd. 1.) This common ownership purportedly occurred when both Davis and the Downs owned fee title to all of blocks C, D and E.

As is apparent from the diagrams which precede this part of our opinion, blocks C, D and E made up but a small portion of the Temescal Garden subdivision. The issue therefore is whether, in a case involving a network of streets laid out in connection with a subdivision, anything less than the entire subdivision can be said to be either the dominant or servient tenement for purposes of merger. This issue requires a brief discussion of some of the fundamentals of the law related to easements.

■ An easement is an incorporeal interest in the land of another which gives its owner the right to use another's property. (*Moylan v. Dykes* (1986) 181 Cal.App.3d 561, 568 [226 Cal.Rptr. 673].) The land to which the easement attaches is called the dominant tenement; the land on which the burden is imposed is called the servient tenement. (Civ. Code, § 803; *ibid.*)

■ Here, each owner in the subdivision has the right to use every other owner's property to travel both within and through the subdivision. The easement enjoyed by each owner, which consists of the entire network of streets set out in the subdivision map, is not only appurtenant to that owner's particular lot, but is appurtenant to every lot in the subdivision, (see *Moylan v. Dykes, supra*, 181 Cal.App.3d 561, 573), and conversely every lot in the subdivision is burdened by every other lot owner's right to use it. (See *ibid.*) In other words, each owner enjoys an easement which is not simply an easement over an abutting owner's land, but which is an easement over the land of nonabutting owners; the whole of the subdivision is in essence the servient tenement to each lot, and each lot is servient to every other lot. This being so, there can be no merger unless there is common ownership of the entire subdivision; such common ownership never occurred.

■ The Keplers next urge that the easement was abandoned. However, the evidence submitted by the Keplers to show that the prior owners (Davis, the Downs and the Bills) intended to abandon the private easement—that trees were planted on the avenue, or that the Downs and the Bills obtained a grant of easement to use another portion of Diplomat—was not exclusively susceptible to that interpretation; an easement created by grant is not lost by mere nonuse, no matter how long, and may be lost by abandonment only when the intention to abandon clearly appears. (*Haley v. L.A. County Flood Control Dist.* (1959) 172 Cal.App.2d 285, 290-291 [342 P.2d 476].)

■ Abandonment is a question of fact for the trial court or the jury (*Gerhard* v. *Stephens* (1968) 68 Cal.2d 864, 890-892 [69 Cal.Rptr. 612, 442 P.2d 692]) which will not be disturbed on appeal if the trial court's determination is supported by substantial evidence. (*Id.,* at pp. 891-892.) ■ Abandonment hinges upon the intent of the owner to forego all future conforming uses of the property, and there must be conduct demonstrating that intent which is so decisive and conclusive as to indicate a clear intent to abandon. (*Id.,* at p. 889.)

■ Trees planted on a way may indicate nothing more than the property owners' intent not to use the way as a way until some time in the distant future, e.g., not until the lots fronting on the way are developed. Furthermore, the Downs' and Bills' act of obtaining an easement over another part of Diplomat Avenue is as susceptible to an inference that the Downs and Bills were under a misapprehension of the nature of their rights to a private easement over Diplomat Avenue (a misapprehension produced, perhaps, by the abandonment of the *public's* right to use the street) as it is to an inference that they intended to abandon their right to a private easement. If it is the case that the Downs and Keplers were in fact unaware of their right to a private easement, they could hardly be held to have ever *intended* to abandon such a right.

■ The Keplers urge, as to this issue of intent to abandon, that the trial court actually found an intent to abandon, but mistakenly believed such intention was not material, based on the court's oral statements, e.g.:

"The Court: I think it is—I think it is somewhat moot. I think very probably he did intend to abandon it, but I don't think that is material here, and I think that it's moot as to what the county did because the county never accepted an easement.

. . . . . . . . . . . . . . . . . . . . .

"Mr. Ward: So you believe that his intention then is not material?

"The Court: Is not material, right."

Generally, oral opinions of the trial court may not be used to impeach the findings or judgment. (*People* v. *Megladdery* (1940) 40 Cal.App.2d 748, 773 [106 P.2d 84].) While there are exceptions to this rule (*ibid.*), those exceptions involve situations in which the judge's statements as a whole disclose an incorrect rather than a correct concept of the relevant law, embodied not merely in secondary remarks but in his or her basic ruling. (*People* v. *Butcher* (1986) 185 Cal.App.3d 929, 936 [229 Cal.Rptr. 910]; *People* v. *Ortiz* (1964) 61 Cal.2d 249, 253 [37 Cal.Rptr. 891, 391 P.2d 163].) While oral statements may be used for the purpose of discovering the process by which

the trial court arrived at its ultimate conclusion, they may not be used to impeach contrary written findings. (*Kuffel* v. *Seaside Oil Co.* (1977) 69 Cal.App.3d 555, 568 [138 Cal.Rptr. 575].) One reason for this rule undoubtedly is that a judge may change his or her mind as to the meaning and weight of the evidence between the time an oral statement of opinion or belief is made in court and the time the judgment is signed and entered, and thus oral statements related to the judge's belief or opinion as to evidentiary matters should not be given greater weight than the judgment, which is a manifestation of the trier of fact's *final* opinion or belief as to the evidence. We therefore cannot use the trial court's statements here regarding intent for the purpose of impeaching the final judgment.

 The Keplers also argue that the private easement was lost via adverse possession, because the Downs maintained a fence across Diplomat Avenue along the northerly line of Grandview from 1943 to 1960, thereby blocking not only the public's access, but other subdivision property owners' access, to the section of Diplomat Avenue here at issue.

 An easement obtained by grant, such as the one here, may indeed be lost by prescription, e.g., when the owner of the servient tenement makes a use of his or her own land in a manner which is adverse to the rights represented by the easement. (4 Witkin, Summary of Cal. Law (9th ed. 1987) Real Property, § 477 at p. 655.) For example, in *Glatts* v. *Henson* (1948) 31 Cal.2d 368 [188 P.2d 745], the owner of the servient tenement erected and maintained buildings for five years on part of a right of way. This was held effective to extinguish the easement.

However, not every act which appears, at first blush, to be adverse to the rights represented by the easement will suffice to extinguish it by prescription. For example, in *Furtado* v. *Taylor* (1948) 86 Cal.App.2d 346, 351 [194 P.2d 770], the owners of servient tenements across which an easement for an irrigation ditch lay filled in the ditch and planted it over with crops for some 10 years without objection or interference. Despite this uncontroverted evidence, the trial court held that this use had not been hostile to the rights of the owner of the dominant tenement, nor had it been open, notorious or under claim of right.

On appeal, the *Furtado* court held "This conclusion of the trial court cannot be said to be without ample support in the evidence. There is no evidence on the part of defendants that they ever asserted to anyone any right to use the portion of the ditch for cultivation, or that they ever asserted to anyone any claim that they were the owners of the land free from the easement. They rely solely upon statements that they had farmed

the areas where they had destroyed the ditch and that their operations were visible." (*Id.,* at p. 351.) "As the trial court found that defendants' possession had not been hostile to plaintiff or his predecessors, had not been open or notorious, or under a claim of right, and that none of the defendants had ever asserted any claim to the ditch adverse to plaintiff or his predecessors, and the evidence lends ample support to its conclusions, they are binding upon this court whatever evidence there may be which would tend to support a contrary conclusion." (*Id.,* at p. 353.)

■ Here, the evidence showed that the Downs erected a fence around their property which bisected Diplomat Avenue at the northerly line of Grandview, and that this fence remained in place from 1943 to 1960. According to the Keplers, this is sufficient evidence to support a conclusion that the easement was terminated by prescription.

However, the evidence also indicated that there was a gate in the fence where it crossed Diplomat Avenue, from which it could be inferred that some person or persons used, or could use, if they desired, the right of way. Although the Downs' son testified as to the existence of this fence and the gate, and that the public did not have permission to pass through the gate, he did not testify that the gate was locked, or that other subdivision owners were actually effectively prevented from using the way if they so desired. (See *Silviera* v. *Smith* (1926) 198 Cal. 510 [246 P. 58], in which the owner of the servient tenement built a fence and gate across the right of way and never locked it and owners of the dominant tenement used the way without interruption. Held, tacit assent to the construction of the fence and gate did not destroy the easement. See also *Guerra* v. *Packard* (1965) 236 Cal.App.2d 272, 294 [46 Cal.Rptr. 25], in which a right of way was blocked by a locked gate, but the owner of the dominant tenement continued to use the way by removing the gate from its hinges, by obtaining a key to the gate, or by persuading a caretaker to allow him entry. (*Id.,* at pp. 281-282.) Held, the easement was not extinguished by prescription.)

Furthermore, the Downs' son did not testify that his parents had asserted that they held title to the property free of the easement or that they had a right to use the way in a manner adverse to other owners in the subdivision. Just as in *Furtado* v. *Taylor,* the evidence as a whole supports a determination that the Downs' actions were not sufficiently hostile, open, notorious or under claim of right to constitute a prescriptive extinguishment, nor even so incompatible with the easement's nature or use as to constitute a prescriptive extinguishment. Therefore, the trial court's determination that the

easement was not extinguished is binding upon this court despite the fact that the evidence could support a contrary conclusion.

## DISPOSITION

The judgment appealed from is affirmed.

Campbell, P. J., and Hews, J., concurred.

A petition for a rehearing was denied April 11, 1988, and appellants' petition for review by the Supreme Court was denied July 13, 1988.