Filed 3/20/23  Hall v. Sohn CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| DANA HALL et al.,<br><br>    Plaintiffs, Cross-defendants and Respondents,<br><br>          v.<br><br>DANIEL SOHN et al.,<br><br>    Defendants, Cross-complainants and Appellants. | F083452<br><br>(Super. Ct. No. 10647)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Mariposa County.  Ronald W. Hanson, Judge.  (Retired Judge of the Merced Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)

Mazur & Mazur and Janice R. Mazur, for Defendants, Cross-complainants and Appellants.

Berliner Cohen, Kimberly G. Flores and Lindsay I. Walczak, for Plaintiffs, Cross-defendants and Respondents..

-ooOoo-

This case involves a dispute among the residents of a subdivision (the Bishop-Huntley subdivision), with seven large parcels, in the rolling hills of Mariposa. The dispute arose over the use of a 60-foot-wide easement that serves the seven parcels in the subdivision. The easement is used by the subdivision's property owners for ingress to, and egress from, their properties as well as for accessing other properties within the subdivision.

The plaintiffs—property owners Dana Hall and Michele Minniear, Fred and Muriel Temps, Roger and Laurel Siebecker, and Tom and Carol Schmidt—initiated the action against property owners Daniel and Juliet Sohn, primarily alleging the Sohns were interfering with the other residents' use of the easement that runs, in part, over the Sohns' land. The Sohns filed a cross-complaint against Hall and Minniear, the Temps, the Siebeckers, and the Schmidts, for trespass, quiet title, and declaratory relief. The nub of contention was whether Hall and Minniear, the Temps, the Siebeckers, and the Schmidts could use the entire width of the easement as specified in the instruments granting the easement.

Hall and Minniear, the Temps, the Siebeckers, and the Schmidts brought a motion for summary judgment/summary adjudication. The trial court granted the motion for summary adjudication with respect to most of the claims in the operative complaint; the court found one of the remaining claims was moot and the plaintiffs subsequently dismissed the other remaining claim. The trial court further granted summary adjudication as to all the claims in the operative *cross*-complaint.

The Sohns appeal. We affirm.

## FACTUAL BACKGROUND

### A. The Bishop and Huntley Maps

In January 1980, Gary Bishop subdivided, into four parcels, a large tract of real property (consisting of approximately 38 acres) located in Mariposa County, creating

Parcels A, B, C, and D.  The corresponding "PARCEL MAP [¶ ] FOR [¶ ] GARY BISHOP" (Bishop Map) was recorded with Mariposa County on January 21, 1980.  The Bishop Map offered for dedication to Mariposa County, a 60-foot-wide, non-exclusive easement for public use and utilities.  The easement is clearly delineated on the Bishop Map, which states:

> "**NOTE**:  [¶ ]  ALL EASEMENTS SHOWN ON THIS MAP ARE 60'
> WIDE NON-EXCLUSIVE EASEMENTS FOR PUBLIC USE AND
> PUBLIC UTILITIES:  OFFERED FOR DEDICATION BY THIS MAP;
> SEE OWNERS CERTIFICATE."[1]

The Bishop Map appears in Appendix A to this opinion.  As indicated, the Bishop Map delineates the new Parcels A, B, C, and D (Parcel D was far larger than the other parcels), as well as the easement providing access to the new parcels.

Later that same year, Dennis Huntley acquired Parcel D as shown by the Bishop Map, and subdivided it into four parcels:  A, B, C, and D.  The corresponding "PARCEL MAP [¶ ] FOR [¶ ] DENNIS HUNTLEY" (Huntley Map) was recorded with Mariposa County on June 4, 1980.  Like the Bishop Map, the Huntley Map dedicated a 60-foot-wide non-exclusive easement to Mariposa County for public access and utilities.  More specifically, the Huntley Map referenced the easement offered for dedication in the Bishop Map and delineated an extension thereof—in the form of a "60' wide nonexclusive P.U. & access easement"—to provide access to the additional parcels created by the Huntley Map (we will refer to the easements dedicated by both maps,

---

**1**　　　The Owner's Certificate of the Bishop Map provides:

"**OWNER**[:]  [¶ ]  The UNDERSIGNED, being the parties having a record title interest in the land as plotted by this map, hereby consent to the preparation and recordation of this map, and offer for dedication to Mariposa County all easements as shown on this map and so marked as offered for dedication.  This offer of dedication to Mariposa County shall remain open until either accepted or rejected, in writing, by Mariposa County."

collectively, as the easement). (Unnecessary capitalization omitted.) The Huntley Map appears in Appendix B to this opinion.

The easement lay on each of the parcels created by the Bishop and Huntley Maps, taken together. The easement provides the only means of accessing five or six of the seven parcels established by the Bishop and Huntley Maps, from the main thoroughfare (Yaqui Gulch Road) bordering, on the northeast, the original, undivided Bishop tract. The easement has consistently been used for this purpose since the 1980s, with a graveled roadway soon developing through the center of the easement. The gravel roadway became known as Vista Grande Way (Vista Grande Way or VGW).

On April 5, 1991, Mariposa County recorded an "Acceptance of Dedication," with respect to the offers of dedication in the Bishop and Huntley Maps, indicating that the dedications were accepted for public access but not for maintenance. (Unnecessary capitalization omitted.) The easement is therefore privately maintained.

## B.    The Properties and Property Owners Served by Vista Grande Way

The plaintiffs (Dana Hall & Michele Minniear; Fred & Muriel Temps; Roger & Laurel Siebecker;[2] and Tom & Carol Schmidt (plaintiffs or Hall et al.)) and defendants (Daniel & Juliet Sohn (the Sohns, Sohn defendants, or defendants)), among others, own properties (with residences) served by Vista Grande Way. With respect to the Bishop Map, Roger and Laurel Siebecker own Parcel A; Fred and Muriel Temps own Parcel B; and Dana Hall and Michele Minniear own Parcel C. (See Appen. A.) With respect to the Huntley Map, Daniel and Juliet Sohn own Parcel A; the Miningers (not a party to the instant action) own Parcel B; Tom and Carol Schmidt own Parcel C; and Danielle Zartman (not a party to the instant action) owns Parcel D.

Hall et al. and the Sohns acquired their ownership interests by way of grant deed; each deed describes the respective property by direct reference to either the Bishop or

_____

**2**    Roger Siebecker passed away during the pendency of this action.

4.

Huntley Maps (which maps are recorded with Mariposa County). The parties' properties are five to six acres in size and are located in the rural, rolling hills of Mariposa.

As noted above, the easement lies, in part, on each of the parcels identified in the Bishop and Huntley Maps. The easement touches the Sohns' property along its entire length; it touches the other parcels along various portions of its length. The Sohns acquired their property in 1999.

## C. Maintenance and Upgrades to Vista Grande Way, Over Time

Vista Grande Way was upgraded around 2004 by the affected property owners at the time. Gravel/road base was laid, and the roadway was compacted, graded, and widened to create a cul de sac at its end. In late 2014, several of the plaintiffs noticed that Vista Grande Way was showing signs of wear. Hall and Minniear determined that minor maintenance was necessary, specifically, a new layer of gravel. All the affected property owners concurred and approved the proposed work except for the Sohn defendants. Hall and Minniear went ahead with the proposed work based on the approval of the majority of the affected property owners. New gravel was delivered and spread over the roadway, thereby widening it by a few feet but remaining within the bounds of the easement. The maintenance work occurred on a day in December 2014 and another day in January 2015.

## D. The Dispute Between the Plaintiffs and the Sohn Defendants

Hall et al. used, to varying degrees, Vista Grande Way, the shoulder thereof, and the area bordering the shoulder. For example, plaintiffs Dana Hall and Michele Minniear stated in their respective declarations attached to the motion for summary judgment: "I do use the easement quite frequently, day and night, and have since as early as 1988. Most of my use has been limited to the existing roadway. However, I occasionally use the shoulder of the roadway and the area bordering the roadway on foot, by horse, and by

5.

RTV [rugged terrain vehicle]."  Grassy strips constitute the outer parts of the easement area.

After the December 2014 maintenance on Vista Grande Way was done, a dispute broke out between plaintiffs and the Sohns.  Between January 2015 and May 2015, the Sohns placed, within the newly widened roadway (but outside the border of the pre-2014 roadway), multiple reflectors on stakes; multiple steel T-posts with various signs such as " 'No Trespassing,' " " 'Go Slow in the Roadway,' " and speed limit signs; multiple boulders and concrete pavers; numerous small red flags; and a burn pile.  Mariposa County removed some of the items from the easement on May 26, 2015.  The Sohns made spray paint markings within the pre-2014 borders of " 'VGW.' "

The Sohns installed, on their property, several cameras facing the plaintiffs' properties.  In addition, a number of verbal spats and other confrontations occurred between the Sohn defendants and plaintiffs.  The Sohns also accused plaintiffs of trespassing when they used the roadway.  Both Sohns stated in declarations attached to their opposition papers that they "ha[d] never accused plaintiffs of trespassing while [plaintiffs] were using the gravel roadway or its shoulder *as it existed prior to the end of December 2014*."  (Italics added.)  However, the Sohns acknowledged they "ha[d] repeatedly requested that plaintiffs stop trespassing on the portion of [the easement] *beyond* the roadway as it was before plaintiffs widened it."  (Italics added.)  As to the latter situation, the Sohns demanded that plaintiffs "get off [the Sohns'] property." Plaintiffs, in their declarations, characterized the Sohns' conduct as a "campaign of harassment, confrontations, and complaints," while the Sohns, in their declarations, characterized their conduct as necessary "to protect [their] property rights."  The parties have exchanged the "middle-finger gesture" on multiple occasions.  Law enforcement was called to address the situation multiple times.

Michele Minniear, after one confrontation, obtained a restraining order against Daniel Sohn and a court order directing Daniel Sohn to move all cameras on his property to a location at least 50 feet inside his fence line. Daniel Sohn was subsequently found guilty of three counts of contempt for violating the restraining order.[3]

## E. Separate But Related Action Brought by Daniel and Juliet Sohn Against Mariposa County and Hall et al.

On November 4, 2016, Daniel and Juliet Sohn filed an action in Mariposa County Superior Court against Mariposa County and related agencies and bodies (collectively, Mariposa County), as well as the instant plaintiffs (Hall et al.). We will refer to the November 4, 2016 action brought by Daniel and Juliet Sohn—which action was *separate from but related to* the instant action—as the related action. Daniel and Juliet Sohn filed the related action after plaintiffs had initiated the instant matter. Before we turn to detailing the procedural history of the instant matter, we will briefly describe the related action.

*In the related action*, Daniel and Juliet Sohn sought declaratory relief, quiet title, injunctive relief, and damages based on the same factual background as is applicable to the instant action. Daniel and Juliet Sohn's causes of action for declaratory relief and quiet title asserted the easement was not a valid public easement because Mariposa County did not properly accept the Bishop and Huntley Maps' offers of dedication with respect to the easement.

In June 2017, *Mariposa County* demurred to the operative complaint in the *related action*. Among the grounds asserted in the demurrers to the declaratory relief and quiet title claims were that the challenges to the validity of Mariposa County's acceptance of

---

**3** On multiple occasions, Daniel Sohn unsuccessfully sought review of the restraining order and/or contempt orders from this court. (See *Minniear v. Sohn* (Aug. 30, 2017, F072835) [nonpub. opn.]; *Minniear v. Sohn* (dism. June 9, 2016, F073130); *Sohn v. Sup. Ct.* (pet. denied Aug. 5, 2016, F073822); *In re Sohn* (pet. denied June 1, 2018, F077562).

the offers of dedication were meritless, time-barred, and sounded in mandamus and, in turn, the claims did not state facts sufficient to constitute a cause of action. *Hall et al.* demurred to the operative complaint in the related action in July 2017. Among the grounds asserted by Hall et al. in their demurrer was that the instant matter was already pending between the same parties and encompassed the same claims. In September 2017, the trial court sustained, without leave to amend, the general and special demurrers filed by Mariposa County and by Hall et al. and entered judgment in favor of Mariposa County and Hall et al.

In November 2017, Daniel and Juliet Sohn appealed the judgment *solely* as to Mariposa County's demurrer to *one* of the causes of action in their operative complaint, that is, a cause of action for violation of civil rights. That cause of action related to the removal, by Mariposa County on May 26, 2015, of items placed in the easement by Daniel and Juliet Sohn. This court affirmed the judgment of the trial court (and denied the Sohns' subsequent petition for rehearing).[4]

## PROCEDURAL HISTORY

### A.     The Operative Complaint and Operative Cross-Complaint

The instant matter was initiated by Hall et al. on April 15, 2015. Hall et al. filed a complaint against the Sohns for interference with easement, nuisance, breach of contract/covenant, and declaratory relief. In May 2015, the Sohns filed a cross-complaint against Hall et al. for trespass, declaratory relief, and false imprisonment, asserting, in part, that the easement was not a valid public easement, and that any easement was limited to the historical width of Vista Grande Way, allegedly ranging from nine to 20 feet in width along the length of the roadway.

---

[4]     Thereafter, the Sohns' petition for review and petition for writ of certiorari were denied by our Supreme Court and the federal Supreme Court, respectively.

8.

In January 2016, Hall et al. amended the complaint (operative complaint) to add a cause of action for quiet title to easement by prescription. On December 28, 2017, the Sohns amended the cross-complaint (operative cross-complaint), adding Mariposa County as a cross-defendant as to their cause of action for declaratory relief, eliminating their cause of action for false imprisonment,[5] and adding a cause of action for quiet title against Hall et al. and Mariposa County.

In March 2018, Mariposa County demurred to the Sohns' operative cross-complaint on grounds, among others, that the Sohns' claims were barred by the final judgment in the *related action* between Mariposa County and the Sohns, which action encompassed the same causes of action. Since the related action was pending in the appellate court at the time, the trial court *stayed the instant matter* pending resolution of the related action.

The instant matter resumed in August 2020, after the judgment in the related action had become final. The trial court thereafter sustained, without leave to amend, Mariposa County's above-mentioned demurrer to the Sohns' operative cross-complaint, in part on account of the final judgment in the related action. Once Mariposa County was dismissed from the matter, the matter was limited to Hall et al.'s operative complaint against the Sohns and the Sohns' operative cross-complaint against Hall et al. To reiterate, Hall et al.'s claims were interference with easement, quiet title to easement by prescription, nuisance, breach of contract/covenant, and declaratory relief. The Sohns' cross-claims were trespass, declaratory relief, and quiet title (as to Hall et al. only).

**B.      Hall et al.'s Motion for Summary Judgment/Summary Adjudication**

In March 2021, Hall et al. filed a motion for summary judgment or summary adjudication. The motion was heard in June 2021. The trial court determined, based on

---

[5]      The trial court granted, on December 5, 2017, Hall et al.'s motion for judgment on the pleadings as to the Sohns' cause of action for false imprisonment.

applicable law and the undisputed facts, that every property owner in the Bishop-Huntley subdivision had a private easement over the 60-foot area delineated for access in the Bishop Map and the Huntley Map. The trial court further determined, based on the undisputed facts, that the Sohns engaged in conduct that unreasonably interfered with Hall et al.'s use and enjoyment of the easement.

The trial court granted Hall et al.'s motion for summary adjudication as to the first (interference with easement), third (nuisance), and fifth (declaratory relief) causes of action in the operative complaint. The trial court concluded that Hall et al.'s second cause of action (quiet title by prescription) was moot in light of its finding that Hall et al. had a private easement over the entire 60-foot area delineated for access in the Bishop Map and the Huntley Map. Finally, the trial court denied summary adjudication as to Hall et al.'s fourth cause of action (breach of contract/covenant), finding there were triable issues of fact regarding that claim.

As to the claims in the Sohns' cross-complaint, the trial court granted Hall et al.'s motion for summary adjudication as to all the claims in the operative cross-complaint.

The trial court's ruling on Hall et al.'s motion, order on Hall et al.'s evidentiary objections, and order on the Sohns' objections to Hall et al.'s requests for judicial notice, were filed on June 15, 2021. In light of the trial court's ruling, the only remaining claim in the matter was the fourth cause of action (breach of contract/covenant) in Hall et al.'s operative complaint. Hall et al. thereafter voluntarily dismissed the remaining fourth cause of action in the operative complaint. Judgment was entered in September 2021. This appeal followed.

## C. Summary of Trial Court's Written Ruling Granting Summary Adjudication

To illuminate the trial court's reasoning, we will excerpt parts of its written ruling, granting summary adjudication in favor of Hall et al. The court first found: "Each property owner in the Bishop-Huntley subdivision has a private easement for ingress and

egress to their property over the entire 60-foot area set forth in the Bishop-Huntley subdivision maps." The court based its determination on the undisputed facts regarding the grant of the easement in the Bishop Map and the Huntley Map, as well as *Tract Development Services, Inc. v. Kepler* (1988) 199 Cal.App.3d 1374, 1381-1382 (*Tract Development*) (cited by Hall et al.). The court also discussed *Scruby v. Vintage Grapevine, Inc.* (1995) 37 Cal.App.4th 697, 702-703 (*Scruby*) (cited by the Sohns), evidently concluding that *Scruby* was distinguishable (see below).

The court then addressed Hall et al.'s first cause of action, interference with easement. The court noted:

> "The Court finds that the following facts are undisputed as they relate to Defendant Sohn's interference with Plaintiffs' right of ingress and egress over the 60-foot wide private easement:

> "Defendants placed multiple reflectors, signs, steel stakes, T-posts, [boulders], concrete pavers, spray paints, multiple red flags, and a burn pile within the 60-foot wide easement area. Defendants did not deny the placement of these obstructions, but contend that they never were placed in the graveled portion of [Vista] Grande Way ('VGW') *as it existed prior to Plaintiffs' widening of VGW in December 2014*. Prior to December 2014, VGW was a gravel roadway through the center of the 60-foot wide non-exclusive easement that varied in width from nine feet to 20 feet. After December 2014, Plaintiffs widened VGW from eleven feet to 24 feet. Defendants Sohn do not deny that the reflectors, stakes, etc. were placed within the 60-foot private easement area. These items would obstruct the 60-foot wide private easement area for ingress and egress. [¶ ]…[¶ ]

> "Defendant Sohn acknowledges he repeatedly accused Plaintiffs of, and requested them to stop[,] trespassing on his portion of the servient tenement, which would lie from the outer edge of the graveled VGW [as it existed prior to the maintenance work performed in December 2014] to the edge of the 60-foot wide private easement nearest the Sohn parcel; all of which would be within the Sohn servient tenement area. The estimated width of this area is from 18 feet to 24 feet. The repeated accusations and threats would interfere with Plaintiffs' enjoyment of the Bishop-Huntley 60-foot wide private easement for ingress and egress." (Italics added.)

11.

The court concluded: "Plaintiffs' Motion for Summary Adjudication for Plaintiffs' First Cause of Action for Injunctive Relief to enjoin Defendants Sohn from interfering or obstructing Plaintiff[s'] use and enjoyment of the 60-foot easement for ingress and egress is GRANTED."

The court next addressed Hall et al.'s other causes of action. The court ruled:

"Plaintiff[s'] Motion for Summary Adjudication of Plaintiffs' Second Cause of Action to quiet title to a prescriptive easement is moot, as each property owner of any parcel within the Bishop-Huntley subdivision has a 60-foot wide private easement for ingress and egress created by the Bishop-Huntley subdivision maps.

"Plaintiffs' Motion for Summary Adjudication of their Third Cause of Action for Nuisance and Plaintiffs' Motion for Summary Adjudication of their Fifth Cause of Action for Declaratory Relief are GRANTED for the same reasons set forth in the granting of Plaintiffs' Motion for Summary Adjudication of their First Cause of Action for Interference with Easement.

"Plaintiffs' Fourth Cause of Action for Breach of Contract and/or the covenant recorded in connection [with the] Bishop/Huntley Subdivision requiring each parcel owner to pay a pro rata share of the 2014 improvement/maintenance costs would be granted if not for the diminimus amount -- $91.42. However, the motion is denied as it appears the plaintiff[s'] seek damages for alleged 'offensive activity' prohibited by the Bishop/Huntley covenants. Not only is the covenant in need of interpretation, but there are triable issues of fact as to whether the Sohn[s] breached whatever activity the covenant was intended to bar."

The court thereafter addressed Hall et al.'s motion for summary adjudication as to the claims in the Sohns' operative cross-complaint. The court ruled:

"Plaintiffs' Motion for Summary Adjudication of the First Cause of Action for Trespass and the Third Cause of Action for Quiet Title and the [Second] Cause of Action for Declaratory Relief as alleged in [the] Sohn[s'] Cross-Complaint are GRANTED. The Bishop-Huntley subdivision maps created a non-exclusive private easement in the 60-foot wide area set forth in said subdivision maps for ingress and egress.

"[The] Sohn[s'] reliance on *Scruby* is misplaced. *Scruby* affirmed a judgment that a servient tenement's actions did not interfere with the

12.

dominant tenement's right of ingress and egress.… The facts are undisputed that the Sohn[s] placed obstructions in the area between the south edge of VGW [as it existed prior to December 2014] and the south edge of the 60' Bishop/Huntley access easement. *Scruby* involved an access easement for a single family residence while the instant case involves an access easement for seven property owners. Each of the parcels of the Bishop/Huntley subdivision are five to six acres and located in the Mariposa Hills. The Bishop/Huntley subdivision created reasonable access to each of the plaintiff[s'] property for all lawful uses without limitation to the graveled portion of VGW. The plaintiff[s] are not required to limit access to their property whether by walking, horseback, ATV, heavy equipment, trucks and trailers etc., to the graveled portion of VGW."

## DISCUSSION

### I. Summary Judgment/Summary Adjudication: Standard of Review

Any party may move for summary judgment in an action if it is contended that the action has no merit. (Code Civ. Proc., § 437c, subd. (a).)

"Summary judgment is granted when there is no triable issue as to any material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) This court reviews de novo the trial court's decision to grant summary judgment and we are not bound by the trial court's stated reasons or rationales. [Citation.] [¶] In reviewing a motion for summary judgment, we accept as undisputed fact only those portions of the moving party's evidence that are uncontradicted by the opposing party. In other words, the facts alleged in the evidence of the party opposing summary judgment and the reasonable inferences that can be drawn therefrom are accepted as true." (*Hersant v. Department of Social Services* (1997) 57 Cal.App.4th 997, 1001.)

We consider " 'all the evidence set forth in the moving and opposition papers except that to which objections were made and sustained.' " (*State Dept. of Health Services v. Superior Court* (2003) 31 Cal.4th 1026, 1035.) " 'We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts

13.

concerning the evidence in favor of that party.' " (*Conroy v. Regents of University of California* (2009) 45 Cal.4th 1244, 1249-1250.)

"[F]rom commencement to conclusion, the party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law. That is because of the general principle that a party who seeks a court's action in his favor bears the burden of persuasion thereon. (See Evid. Code, § 500.) There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof…. [A] plaintiff [moving for summary judgment] bears the burden of persuasion that 'each element of' the 'cause of action' in question has been 'proved,' and hence that 'there is no defense' thereto. (Code Civ. Proc., § 437c, subd. (o)(1).) A defendant [moving for summary judgment] bears the burden of persuasion that 'one or more elements of' the 'cause of action' in question 'cannot be established,' or that 'there is a complete defense' thereto. (*Id.*, § 437c, subd. (o)(2).)" (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850, fns. omitted.)

Motions for summary adjudication are procedurally identical to, and subject to review under the same standards as, motions for summary judgment. (Code Civ. Proc., § 437c, subd. (f)(2); *Nakamura v. Superior Court* (2000) 83 Cal.App.4th 825, 832).

## II. Trial Court Properly Granted Summary Adjudication as to Hall et al.'s First Cause of Action for Interference with Easement

### A. *Background*

Hall et al. assert, in the first cause of action (interference with easement) of their operative complaint: "Plaintiffs are the owners of an easement appurtenant to their respective parcels of real property…. The easement consists of a 60 foot wide public road known as Vista Grande Way…. [¶ ] The source of Plaintiffs' title to the Easement is the Bishop Parcel Map … and the Huntley Parcel Map…. In addition, Vista Grande

14.

Way has been used as the only means of accessing Plaintiffs' parcels of real property continuously since at least 1980." They further assert that the Sohns "are the owners of the real property subject to the Easement." In addition, they assert that beginning in January 2015, the Sohns have interfered with the use of the easement by Hall et al., by, inter alia, "installing numerous items and markings" in the easement that decrease the width of Vista Grande Way, thereby creating traffic hazards and the potential for liability for all the adjoining landowners.

As relevant here, in the interference-with-easement cause of action, Hall et al. requested relief in the form of a "permanent injunction restraining and enjoining [the Sohns] from interfering with [Hall et al.'s] access to and use of the 60 foot wide Easement for Vista Grande Way," along with any other relief deemed "just and equitable" by the court. The trial court determined the evidence established that the Sohns "placed multiple reflectors, signs, steel stakes, T-posts, [boulders], concrete pavers, spray paints, multiple red flags, and a burn pile within the 60-foot wide easement area," which items "would obstruct the 60-foot wide private easement area for ingress and egress." The trial court further determined the Sohns acknowledged they "repeatedly accused Plaintiffs of, and requested them to stop trespassing on," the part of the easement that lay beyond the edge of the pre-2014 graveled roadway and on the Sohns' property.[6] The court noted the "repeated accusations and threats would interfere with Plaintiffs' enjoyment of the Bishop-Huntley 60-foot wide private easement for ingress and egress."

The trial court granted the relief, that is an injunction, sought by the plaintiffs under their first cause of action for interference with easement. The trial court judgment states: "Plaintiffs have the right to use and enjoy the entire 60-foot-wide non-exclusive private easement as set forth in the Bishop-Huntley Maps, for ingress and egress by any

---

[6] The trial court referred to Daniel Sohn's acknowledgement, in his declaration, that he made these accusations and demands; however, Juliet Sohn's declaration included a similar acknowledgement (see above).

15.

lawful reasonable means, including, without limitation, walking, horseback, ATVs, trucks, trailers, and heavy equipment." The trial court judgment further provides: "Defendants are permanently restrained and enjoined from interfering with and/or obstructing Plaintiffs' use and enjoyment of the 60-foot-wide non-exclusive private easement as set forth in the Bishop-Huntley Maps, for ingress and egress, including, without limitation, placing signs, stakes, posts, flags, reflectors, boulders, and other items within the easement and accusing Plaintiffs of trespassing and threatening Plaintiffs while using the easement."

### B. Applicable Law and Analysis

" 'It is fundamental that the language of a grant of an easement determines the scope of the easement.' " (*Schmidt v. Bank of America, N.A.* (2014) 223 Cal.App.4th 1489, 1499; *Van Klompenburg v. Berghold* (2005) 126 Cal.App.4th 345, 349 [the language of a grant of an easement determines the scope of the easement]; Civ. Code, § 806 ["The extent of a servitude is determined by the terms of the grant."].) "In construing an instrument conveying an easement, the rules applicable to the construction of deeds generally apply. If the language is clear and explicit in the conveyance, there is no occasion for the use of parol evidence to show the nature and extent of the rights acquired." (*Scruby*, *supra*, 37 Cal.App.4th at p. 702.) The interpretation of an easement, which does not depend upon conflicting extrinsic evidence, *is a question of law*. (*Van Klompenburg v. Berghold*, *supra*, at p. 349; *McCann v. City of Los Angeles* (1978) 79 Cal.App.3d 112, 115, fn. 2, italics added [same]; *Machado v. Southern Pacific Transportation Co.* (1991) 233 Cal.App.3d 347, 352 [when no extrinsic evidence has been admitted, the interpretation of a grant deed is a question of law].)

The easement at issue in this case was an express easement that was granted by the Bishop and Huntley Maps when the Bishop-Huntley subdivision was created in 1980. In this context, *Tract Development*, *supra*, 199 Cal.App.3d 1374, held:

16.

" 'It is a thoroughly established proposition in this state that when one lays out a tract of land into lots and streets and sells the lots by reference to a map which exhibits the lots and streets as they lie with relation to each other, the purchasers of such lots have a private easement in the streets opposite their respective lots, *for ingress and egress and for any use proper to a private way*, and that this private easement is entirely independent of the fact of dedication to public use, and is a private appurtenance to the lots, of which the owners cannot be divested except by due process of law.' " (*Tract Development*, *supra*, at pp. 1381-1382, italics added, quoting *Danielson v. Sykes* (1910) 157 Cal. 686, 689.)

*Tract Development* also held: "Furthermore, the right to an easement created in this manner cannot be lost by mere nonuse, nor because the easement is not necessary for access to the dominant tenement." (*Tract Development*, *supra*, 199 Cal.App.3d at p. 1382, italics omitted.)

Here, it is undisputed that the Bishop and Huntley Maps delineated easements to provide access to the lots in the Bishop-Huntley subdivision. Under *Tract Development*, the maps expressly created a "private easement [that] is entirely independent of the fact of dedication to public use and is a private appurtenance to the lots" established by the maps.[7] (*Tract Development*, *supra*, 199 Cal.App.3d at p. 1382.) Accordingly, the trial court correctly concluded that "[e]ach property owner in the Bishop-Huntley subdivision has a private easement for ingress and egress to their property."

The Bishop and Huntley Maps expressly specify that the easement was 60 feet in width. *Ballard v. Titus* (1910) 157 Cal. 673, 681 and *Tarr v. Watkins* (1960) 180 Cal.App.2d 362, 366, are instructive in this context. These cases stand for the proposition that, where the width of a right of way is *expressly specified* in a grant or conveyance, the owner may have the absolute right to use it to the limits of the specified

---

**7**      An appurtenant easement is an easement that runs with the land. (*Kazi v. State Farm Fire & Casualty Co.* (2001) 24 Cal.4th 871, 881.)

17.

width even if that gives the owner a wider way than necessary. (See *Ballard v. Titus*, *supra*, 157 Cal. at p. 681.) *Tarr v. Watkins* explains: "Where the way over the surface of the ground is one of expressly defined width, it is held that the owner of the easement has the right, free of interference by the owner of the servient estate, to use the land to the limits of the defined width even if the result is to give him a wider way than necessary." (*Id*. at p. 366; see *Norris v. State of California ex rel. Dept. of Public Works* (1968) 261 Cal.App.2d 41, 48 (*Norris*) [dominant tenement had right to use entire easement area when "the size [and location] of the right of way was fixed and defined by precise description"]; *Scruby*, *supra*, 37 Cal.App.4th at pp. 703-704 ["when the width of an easement is definitely fixed by the grant or reservation creating the same, its use may be interpreted as commensurate with the entire width thereof"]; see also *Dolnikov v. Ekizian* (2013) 222 Cal.App.4th 419, 428 ["The grant of an easement must 'be interpreted liberally in favor of the grantee.' "].)

"[A] right of way is a privilege of passage over the land of another, 'with the implied right … to make such changes in the surface of the land as are necessary to make it available for travel in a convenient manner.' " (*White v. Walsh* (1951) 105 Cal.App.2d 828, 832.) Although an easement owner cannot change the character of the easement or materially increase the burden on the servient estate, within those limits the owner "may make repairs, improvements, or changes that do not affect its substance." (*Burris v. People's Ditch Co.* (1894) 104 Cal. 248, 252; *Dolnikov v. Ekizian*, *supra*, 222 Cal.App.4th at p. 428 [same]; 6 Miller & Starr, Cal. Real Estate (4th ed. 2018) § 15:59 ["[t]he owner of a road easement has a right to grade and pave the surface, install guard rails, and add other improvements reasonably required to make the use of the easement safe and convenient"] (fns. omitted).) In addition, an express right-of-way easement presumptively encompasses " 'normal future development,' " whereby such an easement will generally not be restricted to its historical use. (*Zissler v. Saville* (2018) 29

Cal.App.5th 630, 641, italics omitted; *Red Mountain, LLC. v. Fallbrook Public Utility Dist.* (2006) 143 Cal.App.4th 333, 350 [" '[n]ormal future uses [of an easement] are within the reasonable contemplation of the parties and therefore permissible, but uncontemplated, abnormal uses, which greatly increase the burden, are not' "]; Rest.3d Property, Servitudes, § 4.10, com. f, pp. 597-598 ["the manner, frequency, and intensity of use of the servient estate may change to … accommodate normal development of the dominant estate"].)

Here, the seven parcels entitled to use the easement specified in the Bishop and Huntley Maps for access thereto and to other properties within the Bishop-Huntley subdivision were large, approximately five to six acres in size. The area was rural, and the record reflects that at least some of the parties utilized heavy equipment (tractors), rugged terrain vehicles, and horses in the subdivision. Under the authorities discussed above, Hall et al. are entitled to use the entirety of the 60-foot easement delineated in the Bishop and Huntley Maps (see *Tarr v. Watkins*, *supra*, 180 Cal.App.2d at p. 366.), and to reasonably repair and upgrade it (see *Burris v. People's Ditch Co.*, *supra*, 104 Cal. at p. 252). The regraveling, grading, and widening of Vista Grande Way that occurred in December 2014/January 2015 did not change the character of the easement and effected improvements that were reasonably contemplated in the grant. (Cf. *Norris*, *supra*, 261 Cal.App.2d at p. 48 ["the holder of a dominant tenement may not *unduly* increase the burden of the holder of the servient tenement"], italics added.)

Furthermore, the Sohns admitted in their declarations that they "placed various reflectors, T-posts and 'no trespassing' signs … on the area where the roadway had been widened." In addition, the Sohns admitted they would accuse the plaintiffs of trespassing as to the latter's use of the newly-widened portions of the graveled roadway. In these instances, the Sohns would demand that plaintiffs get off the Sohns' property. However, as noted above, the relatively limited widening of Vista Grande Way as part of a needed

19.

upgrade was a reasonable and permissible improvement; plaintiffs were entitled to use Vista Grande Way as widened through the repair and upgrades made in December 2014/January 2015.

Here, the undisputed facts conclusively establish that the Sohns' conduct in placing various impediments on the widened portion of the gravel roadway and consistently accusing the plaintiffs of trespassing when they used that portion of the gravel roadway, constituted an unreasonable interference with the plaintiffs' use and enjoyment of the roadway for ingress and egress and for accessing other properties in the subdivision. (See *Scruby*, *supra*, 37 Cal.App.4th at p. 703 "[w]hether a particular use by the servient owner of land subject to an easement is an unreasonable interference with the rights of the dominant owner is a question of fact"]; see also *Dolnikov v. Ekizian*, *supra*, 222 Cal.App.4th at pp. 429-430 [" 'Actions that make it more difficult to use an easement, that interfere with the ability to maintain and repair improvements built for its enjoyment, or that increase the risks attendant on exercise of rights created by the easement are prohibited … unless justified by the needs of the servient estate.' " (italics omitted)]; *Applegate v. Ota* (1983) 146 Cal.App.3d 702, 712-713 [an obstruction which unreasonably interferes with the use of an easement can be ordered removed "for the protection and preservation" of the easement].)

### C.     *Scruby v. Vintage Grapevine, Inc. is Inapposite and Distinguishable*

The Sohns posit that the trial court failed to properly apply *Scruby*, *supra*, 37 Cal.App.4th 697. But *Scruby* does not require a different result or preclude summary judgment here. In *Scruby*, the plaintiffs (John and Giovanna Scruby, collectively, Scruby) had a landlocked property (a single-family home on 1.03 acres of land), the only access to which was over an easement on the property of the defendant, a winery (Grapevine). The easement was deeded to Scruby by Grapevine's predecessor. The easement grant deed described the easement as a "nonexclusive easement, 52 feet in

20.

width, for *road* and utility purposes," and referenced a survey map indicating the boundaries of the easement (the easement was essentially a "52-foot wide corridor [running alongside a highway] and ending in a cul-de-sac 100 feet in diameter"). (*Scruby*, *supra*, at pp. 700-701, italics added.)

Scruby sought "to enjoin Grapevine from interfering with Scruby's easement by placing obstructions, such as water tanks and grapevines inside the described easement area" (specifically, the cul-de-sac), as well as "injunctive relief to compel Grapevine to remove [existing] tanks and grapevines from the easement area [that is, the cul-de-sac]." (*Scruby*, *supra*, 37 Cal.App.4th at p. 701, 706.) Scruby argued they had " 'the *right*, *as a matter of law*, to use every portion of their 52-foot-wide easement, and the 100-foot diameter cul-de-sac, free of interference by [Grapevine].' " (*Id.* at p. 703.) As for Grapevine, it did "not deny that Scruby [had] 'the right to use the easement to come and go from their property unimpeded,' but [it] contend[ed] that Scruby [had] 'not been granted the right to use discrete "portions of their easement" which [did] not relate to the efficient ingress and egress to and from their own property.' " (*Ibid.*)

The trial court in *Scruby* determined that "the extent of Scruby's right to use Grapevine's land was limited to an easement of ingress and egress to and from the property." (*Scruby*, *supra*, 37 Cal.App.4th at pp. 703-704.) "The court further found that Grapevine had not used its property in any fashion or in any way which had restricted Scruby's access over the easement to their parcel of land." (*Id.* at p. 704.) The question before the appellate court (*Scruby* court) was "whether the trial court's interpretation of the scope of this easement [was] supported by the language of the [easement] instrument, the evidence in [that case's] record, and the intent of the original drafters of the easement grant." (*Id.* at p. 704.)

The *Scruby* court noted: "A great deal of extrinsic evidence about the original creation of the boundaries of this easement was admitted here without objection."

21.

(*Scruby*, *supra*, 37 Cal.App.4th at p. 704.) *Scruby* also noted there was some ambiguity in the easement instrument because the grant was simply for a " 'nonexclusive easement, 52 feet in width, for *road* and utility purposes,' " but it did " 'not specifically describe the intended roadway as *52 feet in width ending in a 100-foot cul-de-sac*.' " (*Id.* at p. 705, italics added.) *Scruby* concluded that, in light of this facial ambiguity, resort to extrinsic evidence as an aid to interpretation was permissible "unless such evidence impart[ed] a meaning to which the instrument creating the easement [was] not reasonably susceptible." (*Ibid.*) "When there is any ambiguity or uncertainty about the scope of an easement grant, the surrounding circumstances, including the physical conditions and character of the servient tenement and the requirements of the grantee, play a significant role in the determination of the controlling intent." (*Ibid.*)

The extrinsic evidence adduced in *Scruby* was analyzed by the trial court and formed the basis for the court's decision. The trial court found that " 'the initial grant of easement in 1966 was made in connection with a planned subdivision of the lands to which the easement was to provide access. Because these lands were never subdivided according to plan, the easement remained in place to service Parcel A [Scruby's property], *but its dimensions were far greater than those contemplated or necessary for access to a single parcel*, and were indeed far greater than that actually employed by the dominant tenement over the history of its use.' " (*Scruby*, 37 Cal.App.4th at p. 705, italics added.) Since the easement expressly was for the purpose of a "road," and in light of the extrinsic evidence to the effect the easement was meant to service a subdivision that was never created, the trial court first concluded that "the extent of Scruby's right to use Grapevine's land was limited to an easement of ingress and egress to and from the property." (*Id.* at pp. 703-705.) The appellate court upheld the trial court's interpretation of the scope of the easement because the latter's " 'construction appears to be consistent with the true intent of the parties.' " (*Id.* at p. 706.)

22.

The trial court further found, with respect to Grapevine's placement of vines and water tanks in the 100-foot cul-de-sac, that Scruby had " 'in no way been blocked or prevented from using the easement for ingress and egress to and from' their property," whereby injunctive relief was not warranted. (*Scruby*, *supra*, 37 Cal.App.4th at p. 706.) The appellate court, in reviewing the issue, concluded: "The record reflects that Scruby actually used a 15-foot wide area of the easement for reasonable ingress and egress to their property. Scruby admitted that the grapevines and water tanks within the boundary of the 100-foot cul-de-sac did not block their access to their property. Consequently, the court's finding that Grapevine's use of the easement area had not unreasonably interfered with Scruby's right of ingress and egress was fully supported by substantial evidence and is binding on appeal." (*Id.* at p. 706.)

The *Scruby* court recognized the principle to the effect that "when the width of an easement is definitely fixed by the grant or reservation creating the same, its use may be interpreted as commensurate with the entire width thereof." (*Scruby*, *supra*, 37 Cal.App.4th at p. 704.) The extrinsic evidence adduced in that case, however, triggered the application of the "equally well settled" principle that " '[t]he specification of width and location of surface rights-of-way does not always determine the extent of the burden imposed on the servient land." (*Ibid*.)

The differences between *Scruby* and the instant case are myriad. The easement grant at issue in *Scruby* was specifically for a "road," while the easement grants at issue in the present matter were for "access" and were not expressly limited to road access. More specifically, the easement instrument at issue in *Scruby* specified a " 'nonexclusive easement, 52 feet in width, for road and utility purposes,' " which language was ambiguous as to the precise dimensions of the intended "road," as well as with respect to the 100-foot cul-de-sac in which the relevant obstructions had been placed. By contrast, in the instant matter, the easements were not limited to road purposes, and there is no

23.

*analogous* claim or showing of ambiguity as to the easement instruments (i.e., the Bishop and Huntley Maps).

In addition, *Scruby* turned, in large measure, on the *extrinsic evidence* adduced there that established the easement had been intended to serve a subdivision that never came into existence.  Thus, the easement's dimensions were reasonably found to be " 'far greater than those contemplated or necessary for access to a single parcel.' " (*Scruby*, 37 Cal.App.4th at p. 705.)  While the Scruby easement served only a single-family residence on approximately a one-acre lot, the Bishop-Huntley easement, in contrast, serves seven parcels that are *each* five to six acres in size.

Finally, in *Scruby*, the obstructions were placed in parts of a 100-foot cul-de-sac at the end of the easement and Scruby admitted the obstructions did not block ingress to and egress from their property.  (See *City of Pasadena v. California-Michigan Land & Water Co.* (1941) 17 Cal.2d 576, 579 ["the owner of the servient tenement may make any use of the land that does not interfere unreasonably with the easement"].)  In the instant matter by contrast, the Sohns were interfering with Hall et al.'s ability to use *Vista Grande Way itself* as widened incident to a reasonable repair and upgrade.

In light of the wide divergence in the facts of *Scruby* and the instant case, *Scruby* is distinguishable and does not control the outcome here.  The trial court's grant of summary adjudication as to the first cause of action in Hall et al.'s operative complaint is affirmed.

## III.  Trial Court's Grant of Summary Adjudication as to Hall et al.'s Third Cause of Action for Nuisance and Fifth Cause of Action for Declaratory Relief

As to Hall et al.'s claims for nuisance and declaratory relief, the trial court ruled: "Plaintiffs' Motion for Summary Adjudication of their Third Cause of Action for Nuisance and Plaintiffs' Motion for Summary Adjudication of their Fifth Cause of Action for Declaratory Relief are GRANTED for the same reasons set forth in granting of

24.

Plaintiffs' Motion for Summary Adjudication of their First Cause of Action for Interference with Easement."

The Sohns' briefs do *not* address the trial court's ruling and judgment as to Hall et al.'s claims for nuisance and declaratory relief, except to note: "The respondents' causes of action for interference with easement, nuisance and declaratory relief all depend on a finding that they were entitled, as a matter of law … to use the entirety of the 60 foot wide non-exclusive easement. Therefore, the analysis as to all these claims is identical."

As discussed above, we concluded in the context of Hall et al.'s first cause of action for interference with easement, that Hall et al. were entitled to use the entirety of the 60-foot-wide non-exclusive easement. Therefore, we affirm the trial court's grant of summary adjudication as to Hall et al.'s claims for nuisance and declaratory relief.

## IV.    The Sohns' Operative Cross-Complaint

The Sohns' operative cross-complaint asserted claims for trespass, quiet title, and declaratory relief. Regarding the motion for summary adjudication as to these claims, the trial court ruled: "Plaintiffs' Motion for Summary Adjudication of the First Cause of Action for Trespass and the Third Cause of Action for Quiet Title and the [Second] Cause of Action for Declaratory Relief as alleged in [the Sohns'] Cross-Complaint are GRANTED."

The Sohns' briefs do *not* address the trial court's ruling and judgment as to the Sohns' cross claims for trespass, quiet title, and declaratory relief, except to note: "Based on its finding that the respondents are entitled, as a matter of law, to use the entire 60 foot wide non-exclusive easement, the trial court entered summary judgment in favor of respondents as to appellants' cross-complaint for trespass and quiet title. [Citation.] For the reasons set forth above, if the summary judgment ruling is reversed as to the respondents' right to use the entire 60 foot wide easement, it must also be reversed as to the cross-complaint's causes of action, which rest on the same set of facts."

25.

In light of our conclusions above, we affirm the trial court's grant of summary adjudication as to the claims for trespass, quiet title, and declaratory relief in the Sohns' cross-complaint.

## V. The Trial Court's Post-Ruling Oral Comments

Finally, the Sohns argue, with regard to the trial court's oral comments at post-ruling hearings: "Summary judgment must be reversed because the trial court effectively admitted that it granted summary judgment based on the court's own personal view of a 'higher and better purpose' which it believes should control, rather than on application of existing and well-established precedent." We reject this argument as it is unsupported by the record. In any event, our review is de novo.

## DISPOSITION

The judgment is affirmed. Plaintiffs/respondents are awarded their costs on appeal.

SMITH, J.

WE CONCUR:


FRANSON, Acting P. J.


PEÑA, J.

26.



# APPENDIX A

27.



# APPENDIX B

28.